The issue in this case is whether Miller and the complainant are husband and wife, and, if so, has he abandoned or neglected her, within the meaning of section 899 of the Code of Criminal Procedure? The fact of the death of the man, Nucall, to whom the complainant was married, is not in issue, but is only relevant to the issue (i. e. the marriage). If his widow claimed dower, then his death would be in issue. The time of his death might be relevant to the issue. Eisenlord v. Clum, 126 N. Y. 566, 27 N. E. 1024. In construing the questions arising upon this appeal, there should be no presumption in favor of the complainant, who has abandoned one husband and two families. It is not my intention to pass upon the question (assuming that the death of Nucall was properly shown) whether there is sufficient evidence of a subsequent marriage to require its submission to a jury. For the reasons stated, the record of conviction and warrant of commitment of the magistrate cannot be sustained.

There is also another difficulty, of quite a serious character, presented in the record before me. The defendant, assuming that he is the husband of the complainant, could, within the provisions of section 899, be convicted of having actually abandoned his wife or children without adequate support,—the evidence might justify this particular finding,—or of leaving them in danger of becoming a burden upon the public, or of having neglected to provide for them according to their needs. The magistrate found the defendant guilty of being a disorderly person, "in that the said George U. Miller, at the town aforesaid, on the said 24th day of July, 1899, did leave his wife in danger of becoming a burden upon the public." There is no proof to sustain this finding. It appears that Miller deeded a house and lot to the complainant, and it does not appear that this property is not of sufficient value, as between the town of Geddes and the complainant, to amply protect the town from the complainant's becoming a burden upon it. It appears affirmatively that no application has been made by her to the overseer of the poor for support.

I desire to leave the complainant in a position to retry the issues relative to the death of Nucall, if she so desires, and the form of judgment to be entered in this matter may be reserved until the respective attorneys appear before me upon the settlement of the same.

(30 Misc. Rep. 493.)

In re TRIMM.

(Surrogate's Court, Erie County. February, 1900.)

1. ORPHANS—ADOPTION.
    Where an order of adoption has been set aside by the surrogate's court, the status of the child is the same as if no proceedings of adoption had ever been had, and the child may be again given in adoption to the same parties.

2. SAME—JURISDICTION OF SURROGATE'S COURT.
    Under Laws 1896, c. 272, providing that the surrogate and the county court shall have concurrent jurisdiction over the adoption of children made from orphan asylums or charitable institutions, the surrogate has jurisdic-

tion over the adoption of a child made from the superintendent of the poor.

3. SAME.
Under Laws 1896, c. 272, giving the surrogate and the county court concurrent jurisdiction to make and revoke orders in adoption proceedings, the surrogate's court has no authority to revoke an order of adoption made by the county court, as by making such appointment the jurisdiction of the county court became exclusive.

Petition of Elizabeth C. Thomas to set aside an order of the county court authorizing the adoption of Matilda Trimm by John N. Hoefle. Dismissed.

Leroy S. Andrus (Simon Fleischmann, of counsel), for petitioner. John M. Hull, for respondent guardians.

MARCUS, S. This is a proceeding to set aside an order of adoption made herein on the 8th day of February, 1898, by the county judge of Erie county, on the ground that the foster parents are not proper persons to have the care and custody of the child. It appears without controversy that the child was surrendered to the superintendent of the poor of Erie county in December, 1892, by a written instrument, and was thereafter placed in the German Roman Catholic Orphan Asylum until a permanent home could be provided. It further appears that the child remained in that institution from December, 1892, to September, 1893, when the child was taken from that institution, and given by the superintendent of the poor of Erie county to John N. and Barbara C. Hoefle. It is conceded that the child is without property of any kind or nature whatsoever. In 1897 a proceeding was instituted in the Erie county court to set aside the instrument of surrender to the superintendent of the poor, on the ground that the father of the infant was intoxicated at the time of the signing of said instrument. This proceeding resulted in a dismissal of the petition. Thereafter another proceeding was begun in the surrogate's court of Erie county to set aside the order of adoption, and mutual relation created thereby, on the statutory grounds of cruel and inhuman treatment, which resulted in a decree being made by the surrogate's court on January 11, 1898, abrogating the order of adoption. No disposition of the child was made in that decree, but the infant was, as a matter of law, restored to its original status,—the superintendent of the poor becoming again its legal protector,—or, to speak more accurately, the status of such child became the same as if no proceedings had been had for the adoption thereof. Immediately on the making of that decree, a writ of habeas corpus issued out of the supreme court, returnable forthwith, and the child was produced in court, and allowed to remain with its foster parents pending the further disposition of said proceeding. On the 5th of February an order was made by which the petition for the writ of habeas corpus was dismissed, and the custody, care, and control of said infant were ordered to remain in and with the superintendent of the poor of Erie county. It will be observed that this order in no way disturbed the decree of the surrogate's court theretofore made on the 11th of January, 1898, since

by force of the surrogate's decree the superintendent of the poor became entitled to the custody and care of said infant. Subsequent thereto, and on the 8th day of February, 1898, the present order of adoption, upon which these proceedings arise, was made by the county judge of Erie county, which resulted in the county court again giving in adoption to the same parties this infant, upon the consent of the superintendent of the poor and the consent of the foster parents; and this notwithstanding the decree of this court theretofore made, which had in no way been disturbed by appeal or otherwise, and so remains. From the order of adoption made by the county court, above mentioned, an appeal was taken to the appellate division of the supreme court, and the same was in all things confirmed, without opinion. 55 N. Y. Supp. 1150. Another writ of habeas corpus issued out of the supreme court, which resulted in an order being made by which the petition for the writ was dismissed, and the petitioners sent to the surrogate's court for further relief. Before the final hearing in this proceeding a writ of prohibition was served, restraining me from in any manner proceeding with the same. This writ was set aside, and the matter went on to a conclusion. It should be remembered that no appeal was ever taken from the decree of the surrogate's court, and the force of that judgment remains unimpaired, except in so far as it was practically reversed and set aside by the county court in its order of adoption made in February, 1898. The circuit having been completed, a fresh start is again taken in this court, and it must be admitted that, if the proceedings are not unique, they are at least novel.

No question of jurisdiction was raised in the first proceeding in this court, but, since it is now contended that the surrogate's court has no jurisdiction on the admitted facts of the case, the matter of jurisdiction is treated as an original question. The claim of lack of jurisdiction is made by the relator upon this hearing by reason of the fact that this child was in no way adopted from an "orphan asylum or charitable institution," as defined by chapter 272 of the Laws of 1896, under which these proceedings arise, and from which it is urged that the legislature intended to give the surrogate jurisdiction in proceedings of this character only when the child had been actually adopted from a charitable institution or orphan asylum, and not by the act of the superintendent of the poor himself, on the one hand, and the claim of the petitioner, on the other, that this court has jurisdiction; that the legislature, in making the domestic relations law, clearly intended to codify existing prior laws which should apply to all cases provided by the statutes of 1884, giving the county judge co-ordinate jurisdiction with the surrogate's court over proceedings relating to the adoption of infants and the abrogation of adoption; that the statute is remedial, and should be liberally construed, and be understood in the sense which best harmonizes with the subject of the enactment and the object which the legislature had in view, as well as with reference to the object to be accomplished by the act; that the superintendent of the poor is, within the contemplation of law, a charitable institution,—at least, to the extent which should give this court jurisdiction; that no vio-

lence is done to the intent of the statute by characterizing such officer as a "corporation" or an "institution"; that every incident attached to the office affords such a conclusion. Without passing on the question, I am impressed with the fact that, unless the offi- cers designated in the statute can act in this proceeding, there can be no remedy or relief. The proceeding to abrogate adoption can only be effected by the proceeding instituted, and only by the court and officers provided by law, to wit, the county judge or by the sur- rogate's court. While it is true that the supreme court has plenary power over the custody and control of infants, even to the extent of taking such infants from the custody and control of natural parents, yet it can no more abrogate an adoption than it can decree that the laws of inheritance should be set aside. It follows, there- fore, that the proceedings of the supreme court upon the writs of habeas corpus were only directed to the question of who was the proper custodian of the infant, and had no bearing on the question directly under discussion. There is no doubt but that court may exercise the very widest range of authority over the person and property of an infant, yet it seems to have no power under the domes- tic relations law to abrogate an adoption, or, in the words of the former statute, "cancel the agreement of adoption." Such power is placed in the county judge and in the surrogate's court, and, until the adoption is abrogated by one of these two tribunals, the con- tract of adoption, carrying with it parental and filial relations, with property rights appertaining to those relations, remains in force, wholly undisturbable by anything any other court can do. It is interesting to inquire what effect the former decree made by this court has upon this proceeding. It is somewhat anomalous. When the decree of the surrogate's court was made, the child, by operation of law, was placed in its former status, which, in the words of the statute, "should be the same as if no proceeding had been had for the adoption thereon." The decree, being unreversed, and not even appealed from, stands, it would seem, as an adjudication between those parties, not only as to its final effect, but also as to all ma- terial questions involved in its validity. My views as to the unfit- ness of the foster parents, and of their cruel and inhuman conduct, and as to their being improper persons to have the custody and con- trol of this child, are expressed in the decree of January, 1898, and have never changed. These conditions were shown to my satis- faction to exist at that time, and, from the precocious untruthful- ness of the infant herself upon this proceeding, as well as her un- natural demeanor, incline me to the belief that their influence still continues. The further fact that these foster parents felt obliged to send this infant out of their own power, control, and restraint, to practically restricting influences, confirms my original belief upon this question.

Proceedings have been brought for abrogation, adoption, and to set aside original surrenders in this matter, and have been con- stantly before the courts for upwards of three years. The result of concurrent jurisdiction has been exceedingly harmful, at least to the welfare of this infant. The proceedings, in one form or another,

in different courts, for the past years, have made life almost a burden to the foster parents as well as this infant. The abrogation of the decree of the surrogate's court being almost immediately followed by the readoption to the same foster parents in the county court, again followed by another proceeding in this court for abrogation, leaves neither tribunal with any assurance that a judgment rendered after careful deliberation will ever be final.

I have determined to dispose of the question of jurisdiction upon a view presented by neither party to this proceeding. This infant was adopted in pursuance of the provisions of chapter 272 of the Laws of 1896, and, though the jurisdiction of the county judge and surrogate's court is concurrent under this act, I am nevertheless of opinion that the power to abrogate an order of adoption does not rest in a court other than that which granted it; nor do I believe an order of adoption can be granted after another court of concurrent jurisdiction has judicially determined, between the same parties, that they are unfit to retain the privileges and rights following such a contract by abrogating the same. While the law always requires the sanction of a court, to create or destroy such status, it never could have been intended that the county judge should sit as a court of appeals on the judgment of the surrogate, or that the surrogate's court should sit in that capacity on the judgment of the county judge. Any other view would result in the possibility of an endless chain of adoption and abrogation between the same parties; for after the abrogation of an order of adoption granted by one court as a conclusion of deliberate judgment, founded upon substantial evidence to support it, an order of adoption is made by a court of concurrent jurisdiction, as in this case, to the identical parties from whom such contract and the rights and privileges hereunder were canceled, the abrogation is immediately nullified in fact, and the original status restored by the judgment of another court to whom concurrent jurisdiction is given by the statute. Surely there is no express power in the statute for such review. The evil of such a construction is apparent in this case, and seemingly gives to a court, at least in effect, powers that never could have been intended by the legislature, and which belong to appellate courts. The simple order of adoption made by one court after abrogation by another between the same parties completely nullifies and makes void the judgment of one court by another of co-ordinate jurisdiction, giving it, in effect, powers exercised only by appellate tribunals, and so completely destroying and doing violence to the intent of the statute in question. The petitioners must therefore seek their relief in that court from which the order of adoption issued.

I can only express my regret that the question of jurisdiction was not argued on the first hearing. It was assumed by all parties. Upon the merits of the controversy there is nothing that changes my views as originally expressed in the decree rendered in January, 1898, after carefully weighing the testimony of 30 witnesses. I regret again to add uncertainty to what seems to be a determined effort to establish right as differently viewed by the parties to this proceeding, and would gladly direct such judgment as would bring the pro-

ceedings to a final determination for the advantage of all concerned, though I believe that to be quite impossible until every legal remedy is exhausted. The questions raised not only are important, but novel and intricate, and can only be settled definitely and finally by a court of highest resort.

Petition dismissed, without costs.