Proceedings for a compulsory accounting by Robert Armstrong, Jr., as administrator of the estate of Mary Eldridge, deceased. From an order of the surrogate refusing to vacate a decree abating the proceedings on the death of the administrator, the petitioners appeal. Reversed.

Argued before PARKER, P. J., and SMITH, KELLOGG, CHASE, and FURSMAN, JJ.

Willard Robinson, for appellant J. T. Eldridge.

C. H. Sturges, for appellant Alfred C. Hodgman.

KELLOGG, J. It appears from the moving papers that a petition for a compulsory accounting by Robert Armstrong, Jr., administrator, etc., was presented by the residuary legatee to the surrogate of Washington county, and proceedings and hearings were thereunder had from March 21, 1898, to November 4, 1901, when the matter was finally submitted to the surrogate's court for decision. On December 30, 1901, the surrogate, not having rendered a decision, made an order therein reciting:

"It having been brought to the attention of this court that Robert Armstrong, Jr., died on the 27th day of November, 1901, in the city of New York, before the decision of this proceeding, and no motion having been made by the petitioners to revive the same, and no administrator of the estate of Robert Armstrong having been appointed, and due consideration having been had, it is ordered, adjudged, and decreed that the said proceeding has abated; and it is ordered, adjudged, and decreed that the petitioners pay the stenographer's fees in full, amounting to $368."

This order and decree appears to have been made by the surrogate without notice to any of the parties to the proceeding, without being moved by any of the parties, and without any proof, by affidavit or otherwise, of the death of Robert Armstrong, or any proof of any laches in seeking a revival or in the appointment of an administrator, or any proof of the existence of unpaid stenographer's fees. So far as the order and decree shows, it was the private affair of the surrogate, having its origin with him alone, by him alone conducted, and carried into the public records of his office apparently in the form of a judicial determination of some pending issues of fact. Within 15 days after the entry of this order and decree, an application was made to the successor of this surrogate to vacate such order and decree, and such application was made upon affidavits setting forth all the facts, and was heard on January 29, 1902, and denied.

I find no precedent for such an order and decree made in the manner indicated. Very material rights of parties were here disposed of without a hearing, or any opportunity for a hearing. The right to revive the proceedings is recognized and provided for in section 2606 of the Code of Civil Procedure, and when revived, as here provided for, the proceedings may be continued to a final decision. This is a valuable provision for those who have been long engaged, and at large expense, in an accounting, before the death of the accounting trustee or administrator. It was held in Re Carey's Will, 24 App. Div. 531, 49 N. Y. Supp. 32, that a surrogate has power to take up the proceedings at a point where they were left at the death of his immediate predecessor in office, and decide the questions at issue on the evidence previously taken. The same rule applies in case of revival of the proceedings on the death of an administrator. To enter a decree denying the right to revive the proceeding is, in effect, treating all the work done and evidence taken as a nullity; hence an order declaring the proceeding abated is a matter of interest to all the parties, and, being made without notice, must be held to have been made without jurisdiction. The same may be said of the entry of that part of the decree directing the payment by the petitioners of a sum of money.

The order and decree having been made without jurisdiction of the parties affected thereby, and for that reason void, the question arises as to the proper practice to be adopted to have the order and decree annulled of record. A void order or decree may always be attacked collaterally, and without doubt, in this case, on an application to revive these proceedings, might be shown to be void, and no bar to a revival, for that reason. Any attempt to enforce payment of the sum decreed to be paid might be resisted on the same grounds. But the party apparently affected by the order and decree need not wait to test

its validity, but by a motion to vacate may dispose of it. In Kamp v. Kamp, 59 N. Y. 216, the court said:

"If want of jurisdiction makes the order and judgment of the court and the record of its action utterly void and unavailable for any purpose, the want of jurisdiction may always be set up collaterally or otherwise, * * * but he [the party apparently affected] is at liberty, by a more direct and summary proceeding, to have them set aside and vacated."

It being an ex parte order and decree, an appeal does not lie. In Skidmore v. Davies, 10 Paige, 316, the chancellor said:

"If the first order had been regular, as the appellant supposed, his remedy was not by appeal to the chancellor, but an application to the surrogate to set aside the order as irregular was the proper course."

In Vreedenburgh v. Calf, 9 Paige, 129, the chancellor said:

"And if the order * * * was entered when the surrogate had no power to enter such an order, he not only had the right, but it was his duty, to set it aside for irregularity."

In Pew v. Hastings, 1 Barb. Ch. 454, speaking of a decree entered upon default, the court said:

"I think, therefore, the surrogate erred in this case in supposing that he had not the power to open the decree which had been taken by default."

In Sipperly v. Baucus, 24 N. Y. 46, the foregoing cases are reviewed and commended, as to the power and duty of the surrogate.

Seaman v. Whithead, 78 N. Y. 308, was a case in which the surrogate denied a motion to vacate that part of a decree which directed the payment of a sum of money which the surrogate had no authority to direct to be paid. The court of appeals said:

"The question arising in such a case relates to the jurisdiction of the surrogate, and could properly be raised by a motion to set aside the order on that ground. If void, it should have been vacated for that reason, and an appeal lies from an order denying the motion to vacate."

In re Underhill, 117 N. Y. 471, 22 N. E. 1120, was a case arising under the law relating to surrogate courts, as it now appears in the Code of Civil Procedure. In that case the surrogate had vacated, on motion, so much of a decree in final accounting as gave an unauthorized judgment against a legatee. The court, in affirming the order, said:

"And it is a judgment which the surrogate was, as we have seen, wholly without any jurisdiction to enter. He cannot obtain jurisdiction to enter it by formally making it a part of a decree which he has authority to make, nor does he by such a movement change its essential character of a separate judgment liable to be set aside on motion, as was done in this case."

The foregoing decisions show the uniform holding of the courts on the question of the power of the surrogate court touching void orders and decrees, and the proper practice in such cases. That the surrogate court, though a court of inferior jurisdiction, has inherent power over its own records, sufficient to expunge therefrom orders and decrees placed there without authority, cannot be doubted. Nothing contained in subdivision 6 of section 2481 of the Code of Civil Procedure can be construed to deprive the court of this power, even if it cannot be there plainly seen that the power is in terms conferred.

The matters set forth in the moving papers were not controverted on the application to the surrogate to vacate the order and decree, and the order should have been granted. The order is reversed, with $10 costs and disbursements of this appeal against respondents, and the motion to vacate is granted, without costs. All concur.