1. JUDGMENT — COLLATERAL ATTACK—COURTS OF CONCURRENT JURISDICTION—ADOPTION.

Under Domestic Relations Law, Laws 1896, p. 227, c. 272, § 63, giving the county judge and the surrogate concurrent jurisdiction of adoption proceedings, the Surrogate's Court cannot review an order of adoption made by a county judge, which recites all the jurisdictional facts required by such law, in a proceeding for the judicial settlement of an administrator's accounts.

2. ADOPTION—STATUTES—"IF SATISFIED."

Domestic Relations Law, Laws 1896, p. 227, c. 272, § 63, provides that "if satisfied" that the moral and temporal interest of the child will be promoted thereby, the judge or surrogate must make an order allowing and confirming an adoption, reciting the reasons therefor, etc. *Held*, that the words "if satisfied," at the beginning of the section, constituted a clear grant of discretionary power.

Judicial settlement of the estate of Judson R. Ward, deceased. On the return of citation, special guardians were appointed, and Winslow A. Ward put in issue the legality of the adoption of Russell R. Ward, and challenged his right to inherit from decedent as his foster father. Objections dismissed.

S. M. Stevens, for administrators.

R. C. Briggs, special guardian of Russell R. Ward.

McMahon & Larkin, for Winslow A. Ward and others.

M. J. Larkin, special guardian of William B. Ward, an incompetent person.

SEXTON, S.  This is a proceeding for a judicial settlement of this estate.

An illegitimate male child was born June 6, 1893, at Ingelside Home, at Buffalo, N. Y., and named Luther B. Roberts. On February 8, 1895, he was delivered to Judson R. Ward and Charlotte E. Ward, his wife, of Rome, N. Y., with a view to ultimate adoption. On May 1, 1900, proceedings were had before the Oneida county judge, resulting in his adoption by said Wards. Since then he has lived in the Ward family under name of Russell R. Ward. January 10, 1905, foster parent Judson R. Ward died intestate, leaving personal property valued at $119,000, of which estate Charlotte E. Ward and one Franklin B. Beers were appointed administrators on January 16, 1905, and are now acting as such. May 7, 1906, they petitioned for a judicial settlement of the Ward estate, and cited the next of kin, nephews and nieces, to attend said settlement. On the return of the citation the special guardians above named were duly appointed. June 26, 1906, Winslow A. Ward filed an answer, putting in issue the legality of the adoption of said Russell R. Ward, and challenged his right to inherit from his foster father as his only next of kin. On January 2, 1907, Frederick M. Calder was duly appointed referee to determine all questions arising upon the settlement of this estate, which the surrogate had power to determine, and report to the court. The question of the legality·of the adoption of said Russell R. Ward was the only one contested before said referee. On January 9, 1908, the referee filed his report and opinion, holding and deciding that said Russell R. Ward had been legally adopted, and, under the statute of distributions, was entitled to two-thirds of the Ward estate. Exceptions to the findings and refusals to find were filed, which necessitate an examination of the record by the surrogate. The order of adoption, dated May 1, 1900, made by the county judge, recites all of the jurisdictional facts required by Domestic Relations Law, Laws 1896, p. 215, c. 272; and I am of the opinion, based on the evidence before me, that the county judge, in the exercise of statutory discretion, upon the facts and evidence before him, made a valid order of adoption, by virtue of which said Russell R. Ward is entitled to his distributive share in this estate as the only next of kin of said deceased.

Before the referee the jurisdiction of the Surrogate's Court to abrogate an order of adoption made by the county judge was not challenged. The most claimed by those interested in sustaining the relation of parent and child was that the proceedings before the county judge could not be attacked collaterally. I have concluded that the Surrogate's Court is without jurisdiction to review adoption proceedings had before the county judge, pursuant to the provisions of the domestic relations law, either collaterally or directly. Since the enactment of the domestic relations law, the surrogate and county judge have concurrent jurisdiction over adoption proceedings. Prior thereto the surrogate had no such jurisdiction. The judge or surrogate applied to may, in the exercise of his discretion, make an order allowing and confirming said adoption, reciting therein his reasons therefor. Discretionary power is clearly given by section 63 of the domestic relations law (Laws 1896, p. 227, c. 272), which provides:

"If satisfied that the moral and temporal interest of the child will be promoted thereby, the judge or surrogate must make an order, allowing and confirming said adoption, reciting the reasons therefor, and directing that the minor shall thenceforth be regarded and treated as the child of the foster-parent or parents."

The words, "if satisfied," at the beginning of this section, are a clear grant of discretionary power. When a judge, in the exercise of his discretion, grants an order allowing and confirming an adoption, it should not be abrogated by a judge or court of co-ordinate jurisdiction, except possibly in cases of fraud. On this subject, in Corbin v. Casina Land Co., 26 App. Div. 410, 49 N. Y. Supp. 930, the court said:

"The exercise, however, by one judge of authority in review of the discretion exercised by another, to the extent of vacating the orders and determinations of the latter, is of such doubtful propriety as to have been uniformly denied whenever the question has arisen. It is fraught with consequences that may be serious, imperils the stability of an orderly course of procedure in the administration of justice, and is destructive of the dignity and decorum, which should attend upon judicial determination."

In adoption proceedings the surrogate and county judge occupy precisely the same relations as do justices of the Supreme Court, so far as their respective orders are concerned. In the Supreme Court, if an order is erroneously made, the remedy given for its correction is by appeal to the Appellate Division, as provided by the Code of Civil Procedure. An application to set aside, or modify, such an order, made to a court presided over by another justice than the one directing the order, would be practically an appeal from one co-ordinate court to another—a procedure not provided for in the system of practice now prevailing in, and governing, the courts of this state. Section 772 of the Code of Civil Procedure points out the exceptions to this rule.

The rule is concisely and accurately stated in Fisher v. Hepburn, 48 N. Y. 41, to wit:

"It would be a very unwise administration of justice and lead to much vexatious litigation if a judge holding one Special Term could upon the mere motion set aside decision and judgment of another judge at Special Term upon allegations that the latter had erred as to any of the questions submitted for his determination."

For a full discussion of the rule, see People v. National Trust Co., 31 Hun, 20.

To give to a judge statutory power to create, in his discretion, the sacred relation of parent and child, and to a surrogate of concurrent jurisdiction, who has never seen or examined the parties involved, the power to destroy or affirm such relation, on the theory that the next of kin of the deceased can force it upon the consideration of the Surrogate's Court to be disposed of before a decree of distribution can be made, was not in my judgment intended by the Legislature when it passed the domestic relations law. It contains no provision from which such authority can be inferred.

In Matter of Trimm, 30 Misc. Rep. 493, 63 N. Y. Supp. 952, the court said upon this subject:

"While the law always requires the sanction of a court to create or destroy such status, it never could have been intended that the county judge should sit as a court of appeals on the judgment of the surrogate, or that the Surrogate's Court should sit in that capacity on the judgment of the county judge."

The statute itself grants no such power. The authority last cited is also to the effect that, while the jurisdiction of the county judge and Surrogate's Court is concurrent, under the domestic relations law the power to abrogate an order of adoption does not rest in a court other than that which granted it. Sections 66, 67, and 68 of the domestic relations law (Laws 1896, pp. 228–230, c. 272) clearly prescribe the only means by which the relation of parent and child formed under this statute can be abrogated or destroyed. There is no authority under this statute, if I correctly read it, which would enable the next of kin of the deceased to directly attack the adoption proceedings under consideration. The statute furnishes relief only to those directly involved. If a direct attack upon the adoption proceedings is not authorized by the statute, I am unable to understand on what theory a collateral attack can be sustained.

If the foregoing views are correct, it follows that the referee's report herein should be, and is, affirmed.

Decreed accordingly.