Matter of the Application of HECTOR D. MACLEAN and EDITH H. MACLEAN, His Wife, for the Adoption of CHARLOTTE HAYFORD, Infant.

(Surrogate's Court, Westchester County, December, 1919.)

Adoption — when Surrogate's Court without power to abrogate, without consent — Domestic Relations Law.

Where the mother of a three-year old child, the issue of a bigamous union, just before she died, voluntarily gives her written consent to its adoption by strangers, the contract of adoption is valid.

A proceeding for adoption under the Domestic Relations Law is not a judicial proceeding and the Surrogate's Court which confirmed the adoption of said child is without power to abrogate the adoption on the petition of the father of the child, except upon the consent of the foster parents.

APPLICATION for an order abrogating the adoption of an infant.

Harmon & Cheevers, for petitioner.

Wilson Randolph Yard, for respondent.

SLATER, S.   The Surrogate's Court of Westchester county allowed and confirmed the adoption of one Charlotte Hayford, aged about three years, by order dated January 22, 1919.   The mother, Jessie Hayford, consented to the voluntary adoption by agreement executed January 13, 1919, wherein she signed by her mark in the presence of two witnesses.   The mother thereafter died on January 16, 1919.   The full story of her life's drama will be found here.

It was alleged in the adoption papers that the father, Riley Hayford, had abandoned the mother and child. The mother said: " Riley Hayford deserted and abandoned me and the child on or about June 10, 1917; I had not heard from said Riley Hayford since the aforementioned date; I have made every effort to trace and locate him without result, and I do not know of his present whereabouts."

In September, 1919, a proceeding was commenced by the petitioner herein, Riley Hayford, seeking an order abrogating the adoption.   The court will discuss and decide two questions: Was the adoption contract valid? Could such a contract be abrogated by this court?

At common law adoption of children as now understood did not exist.   The status and rights of adopted children are of purely statutory creation.   *Matter of Livingston,* 151 App. Div. 1; *United States Trust Co.* v.

*Hoyt,* 150 id. 621; *Carpenter* v. *Buffalo General Electric Co.,* 213 N. Y. 101.

Chapter 830 of the Laws of 1873, chapter 438 of the Laws of 1884, chapter 703 of the Laws of 1887, chapter 352 of the Laws of 1915, chapter 453 of the Laws of 1916, and chapter 149 of the Laws of 1917 embrace the laws of adoption in this state. The laws relating to adoption are now a part of the Domestic Relations Law. Section 111 relates to the consent to the adoption. In the instant case the foster parents and the mother consented to enter into the contract. The consent of a parent under section 111 who has abandoned a child is unnecessary. Whenever a parent abandons a child, or is deprived of civil rights, or divorced, or becomes insane, or is an habitual drunkard, or is judicially deprived of the child, the law visits such a parent with its disregard and places such a parent without the pale of the law. *Matter of Miller,* Judge May, N. Y. L. J., July 19, 1919. Section 112 relates to the requisites of voluntary adoption. Section 115 applies to adoption of children from charitable institutions.

The term " abandonment " means neglect and refusal to perform the natural and legal obligations of care and support. If a parent withholds his presence, his love, his care, the opportunity to display filial affection and neglects to lend support and maintenance, such a parent relinquishes all parental claim, and abandons the child. *Matter of Larson,* 31 Hun, 539.

From the affidavits and papers in connection with the adoption contract, I am of the opinion that Riley Hayford, if a " parent," had on and before January, 1919, abandoned his wife and child, and in the exercise of my discretion was satisfied at that time that the moral and temporal interests of the child would be promoted by the adoption. Supplemented by the sworn testimony in this proceeding, I still hold to the same opinion.

Surrogate's Court, Westchester County, December, 1919. [Vol. 109.

For another and more serious reason his assent was quite unnecessary. Instead of his endeavoring to take advantage of the law, the law should now be his master, and for his dastardly work in destroying the young life of the mother he should be serving the state in a penal institution. The evidence in the present proceeding shows that Riley Hayford was married to one Margaret Harrison on June 23, 1914, and that he committed a bigamous marriage with the mother of the child herein on October 27, 1915. In any event, the petitioner has not attempted to disprove this fact or attempted to show that his marriage to Margaret Harrison was for any reason illegal. Riley Hayford is not the legal father of the infant. The marriage to the mother of the infant was null and void. *Stein* v. *Dunne,* 119 App. Div. 1; affd., 190 N. Y. 524. He has no standing in this court, and his consent was never necessary to the adoption, nor was he entitled to notice actual or constructive. In *Matter of Gibson,* 154 Mass. 378, the court held that as the child was illegal the putative father was not a " parent " in the sense of the statute. The last act of the mother on this earth in connection with the child was to consent and request that the child be taken and adopted by the foster parents. The maternal instinct, even in the throes of death, could not be overcome.

As to the question of abrogation. Section 116 of the Domestic Relations Law relates to abrogation of voluntary adoption. Section 117 relates to applications in behalf of a child for abrogation of adoption from a charitable institution. These two sections are the only sections of the law relating to question of abrogation. This being a voluntary adoption, section 117 does not apply. Section 116 says: " The foster parent, the person adopted and the persons whose consent would be necessary to an original adoption, must appear

before the county judge or surrogate of the county where the foster parent resides, who shall conduct an examination as for an original adoption. If he is satisfied that the abrogation of the adoption is desired by *all* parties concerned, and will be for the best interests of the person adopted, the foster parent, the person adopted, if over the age of twelve years, and the persons whose consent would have been necessary to an original adoption shall execute an agreement, whereby the foster parent agrees, * * * to relinquish the relation of parent and child * * *."

The foster parents, of course, have not agreed nor consented to the abrogation.

In *Matter of Trimm,* 30 Misc. Rep. 493, Surrogate Marcus of Erie county, in a proceeding to abrogate an adoption of a child coming from a charitable institution, held the Surrogate's Court has power to abrogate an adoption. This case is not in point, however, as the instant case is a voluntary adoption. Likewise, *Matter of Ward,* 59 Misc. Rep. 328, is not a case in point for the same reason. *Matter of Moore,* 72 Misc. Rep. 644, and *Matter of Johnston,* 76 id. 374, hold that under section 2461, subdivision 6 (old number of the Code, now section 2490, subdivision 6), the surrogate may vacate and set aside an order of adoption, and that the fact of abandonment by the father may be raised on the father's application for abrogation upon allegations that he had made proper provision for maintenance of the child and upon his denial of the charge of abandonment. The opinion refers to powers of the surrogate over their own orders, and refers to *Matter of Armstrong,* 72 App. Div. 286; *Kamp* v. *Kamp,* 59 N. Y. 216; *Seaman* v. *Whitehead,* 78 id. 306.

In *Matter of Ziegler,* 82 Misc. Rep. 346, Surrogate Fowler held, in a proceeding to vacate an adoption, that a surrogate has jurisdiction of a proceeding to

abrogate an adoption. The opinion holds that the consent of the natural parents may be dispensed with by the state. Adoption and abrogation thereof are related to the laws of status created by the state and are not contracts between private persons. He says: " It was obviously intended by the law making power that where there was only one person whose consent was necessary, only that person should agree." This opinion very fully sets forth the history of the laws of adoption. Upon appeal, however (*Matter of Ziegler,* 161 App. Div. 589), the appellate court for the first time casts a doubt upon the power of a Surrogate's Court to abrogate a voluntary adoption, except upon the consent of the necessary parties in the first instance. Justice Scott, speaking for the court, said: " We entertain some doubt, however, whether the Surrogate's Court has jurisdiction to entertain the proceeding·and to grant the relief desired. That court is one of strictly limited statutory jurisdiction, and has no general equity powers. The proceedings under the Domestic Relations Law * * * are not judicial in their character and the surrogate in giving his consent acts in his administrative and not in his judicial capacity, nor is the consent signed by him in any sense a decree or order of the Surrogate's Court. * * * only a court of equity would have jurisdiction so to revoke it."

Section 2510 of the Code of Civil Procedure, enacted since the decision of Justice Scott, does not enlarge the equity power of the Surrogate's Court upon this particular point. Justice Carr of the second department, in *Matter of Livingston,* 151 App. Div. 1, raised the question whether the legislature had power to provide for an adoption of an infant without notice to its parents in these words: " To hold that the State may permit its courts to determine without notice to the parent that he has forfeited his natural rights to the

custody of his child, is nothing less than to assert that the powers of the State over the child are in their nature legally superior to the natural rights of the parent."

In the Massachusetts case (*Matter of Gibson*, 154 Mass. 378) the court declined to hold the adoption void because of failure to give notice to the father. This ruling was followed in *Nugent* v. *Powell*, 4 Wyo. 173, upon facts same as in the instant case. The Wisconsin courts, in *Shiltz* v. *Roenitz*, 86 Wis. 31, and *Parsons* v. *Parsons*, 101 id. 76, held the adoption to be void without notice. It is unnecessary in this matter to go further into the power of the state to enact adoption laws in their present form, because I have already held that the petitioner herein does not stand in the relation of " parent " to this child, in the sense of the statutes of this state.

The two late cases in this state have been decided by the second department, and so far as this court is concerned control the law upon the point in the instant case. They overrule the prior holding that the Surrogate's Court has power to abrogate a voluntary adoption. *Matter of McDevitt* (1917), 176 App. Div. 418; affd., 221 N. Y. 598. Justice Stapleton, writing for that court, said: " The voluntary adoption of an infant * * * to which the parent consented cannot be abrogated by a county judge without the consent of the foster parent, for the abrogation is controlled by the statute, which requires the consent of all parties concerned. The county judge * * * has no power to dispense with the essential requirement prescribed by the Legislature, to wit, the assent of the foster parent. The Supreme Court, in the exercise of its equity jurisdiction, can annul an adoption which violates equitable principles."

Again, in *Stevens* v. *Halstead* (1917), 181 App. Div.

198, Justice Blackmar said: "A proceeding for adoption under the statute is not a judicial proceeding. * * * We cannot approve the decisions which hold that the surrogate has jurisdiction to vacate the order allowing and confirming the adoption." *Matter of Moore,* 72 Misc. Rep. 644; *Matter of Johnston,* 76 id. 374.

Not being a judicial proceeding, the order or consent does not fall within the power of the surrogate set forth in section 2490, subdivision 6.

These two last cases considered in the Appellate Division, second department, write the present law of the state upon the power of the surrogate or a county judge to abrogate a voluntary adoption.

For the reasons set forth herein the prayer of the petitioner is denied.

Let order be entered dismissing the petition.

Decreed accordingly.