IN THE MATTER OF THE ADOPTION OF ROBERT ALAN ASTERBLOOM, a MINOR.

LOUIS C. ASTERBLOOM, APPELLANT, *v.* PETER A. BURKE AND ETHEL L. BURKE, HIS WIFE, RESPONDENTS.

No. 3441

January 16, 1946.                    165 P. 2d 157.

*Priest and Priest,* of Reno, for Appellant.

*Melvin E. Jepson* and *C. Lester Zahniser,* both of Reno, for Respondent.

## OPINION

By the Court, DUCKER, J.

The appellant, Louis C. Asterbloom, is the father of Robert Alan Asterbloom, a minor child. Ethel L. Burke, the mother of said minor, was granted a decree of divorce on July 31, 1937, in the Second judicial district court, county of Washoe, in an action brought by her against appellant. Prior to the granting of the decree of divorce appellant and his wife entered into a written agreement and amendment to the agreement providing, among other things, a property settlement, divided custody of the child and reasonable opportunity afforded the appellant to visit his child each week and the privilege of having said child spend with him at least two weekends to be not less than 2½ days, and to have the child spend Easter vacations with him. In granting the decree of divorce the court ratified the agreement in all respects except as to divided custody of the child and awarded the custody to the mother. The agreement for a payment of $15 per week by appellant for the maintenance and education of the minor child was ratified. The court retained jurisdiction and reserved the right to make such further orders for the custody and maintenance of the child as further circumstances may require.

The mother continued to reside in Reno where the divorce was obtained, and on December 17, 1937, remarried. The stepfather of the child, Peter A. Burke, respondent herein, on April 27, 1939, petitioned said court for leave to adopt said minor, who at that time was 9 years of age. The mother consented thereto, and the court in its order of adoption made on said last-mentioned date found that the father had abandoned the child.

On October 17, 1944, appellant filed a notice of motion in said court accompanied by his affidavit, for an order setting aside and nullifying the order of adoption, which came on for hearing on November 21, 1944, and resulted in an order denying the motion. The appeal is taken from this order.

On the hearing of the motion appellant introduced in evidence the complete file of the divorce proceedings, including property settlement, custody and support agreement, and of the adoption proceedings. He then rested his motion. Melvin E. Jepson, the attorney for Ethel L. Burke in the divorce proceedings, in the adoption proceedings, and for the respondent on the motion, testified in his behalf, as did Mrs. Burke. It appears from the former's testimony that on August 11, 1937, he wrote to appellant explaining how he had been unable to get the court in the divorce proceedings to ratify the agreement as to a divided custody of the child; that on December 16, 1937, appellant came to his office and he attempted to arrange a meeting between him and his former wife to discuss the future welfare of the child; that the appointment was made for the afternoon of that day. The former Mrs. Asterbloom appeared but appellant did not. He called the witness by telephone and said: "I am not going to come to your office for the conference as planned and wanted to call you up and let you know I would not be there so you would not wait for me any longer. I have thought this whole matter over and I have decided to drop out of the picture entirely. I am going away and you will not know my address in the

future nor where I will be. Mrs. Asterbloom will not know where I can be reached."

The witness stated that he remonstrated with him as it concerned his son Robert, but the appellant replied, saying, "that what he had said would go for his son Robert also, and that he would not hear from him nor would he be able to get in touch with him." Witness further stated that appellant said he had heard that Mrs. Asterbloom was about to be married and that he was all burned up and washed up about it. Appellant did not come to his office.

The witness testified that on December 30, 1937, he addressed a letter to appellant telling him that it was unfortunate that he arrived in Reno about the time of his former wife's marriage as it prevented working out an understanding in regard to his son. In the letter he also called appellant's attention to the fact that his former wife had not received the last weekly allowance and requested him to send the check to his office; that he had received no communication from appellant since the telephone conversation. On cross-examination the witness testified that no notice was sent to appellant through his office of the adoption proceedings. In answer to a question from the court the witness testified that his telephone conversation with appellant was all laid before the presiding judge in the adoption proceedings by the lady who is now Mrs. Burke, and that the judge proceeded to take her testimony as to what had taken place since the divorce was entered.

Among other things not necessary to be stated, Ethel L. Burke, the former Mrs. Asterbloom, testified that she lived in Reno. That appellant lived up to his agreement as to payments for the support of his son, Robert, from the time of the divorce to the time of her remarriage; that the last time she received any payment for the son from appellant was on the day he was in Reno, December 16, 1937; that the check was dated on the 17th of December, 1937. She confirmed the testimony of Jepson as to the appointment with appellant in his office on

December 16, 1937, and as to the telephone conversation. She testified that she had not received any communication by any means from appellant since December 16, 1937, although she had written to him at least three or four times with regard to making payments, and that the child had received no communication from him; that she never at any time after her remarriage said or suggested to the child that he should not write to his father, but on the contrary was anxious to bring about an amicable relation between the father and the child regardless of how the father felt about it; that on the 10th of September, 1937, due to correspondence between her and the appellant, the latter brought the child from a camp by automobile to her home at Reno and left him with her and that the child has been in her constant care ever since.

It appears from evidence that the camp referred to is a summer camp in Connecticut where the child was under her control. The witness further testified that the payments of $15 per week ordered in the divorce decree were of substantial benefit, as she was only making about $100 plus a small income from renewals of insurance premiums which she had previously sold and that it was necessary for her to maintain a home for the child and employ a maid at $8 per week while she was away at her work; that she was not able to support the child on her income without the help of appellant. She stated that when appellant was in Reno in December, 1937, he did not make any demand for the child. In answer to questions by the court she testified that at the time of the adoption she did not know appellant's whereabouts; that as far as she knew he was not in the state of Nevada; that he knew that she lived in Reno and that the child was with her. In answer to a question by the court, if in the adoption proceedings somebody testified before the judge that appellant had abandoned the baby and that she received no money from him for his support, she said: "That is true." On cross examination she was asked if at the time of filing the petition for

adoption she knew the address of appellant she answered that she had written a letter to him at Van Wick's but got no response and that was the only address she knew of to write to; that at the time of the filing of the petition for adoption she did not know that a letter written to appellant would in all probability reach him; that none of the letters written by her to appellant were returned to her; that at the time of the divorce she knew what business appellant was in but did not know that he was still in that business at the time of the adoption. On cross-examination she identified three letters and two telegrams she had sent to appellant, which were introduced in evidence. It appears from the evidence in the case that at the time of the divorce appellant was a shoe manufacturer doing a large business and that when his former wife lived with him in 1933 he had an income of about $10,000 per year.

The foregoing constitutes substantially all of the material evidence before the court when it made and entered its order denying the motion for an order setting aside and nullifying the order of adoption.

■ The principal points urged by appellant in this case are that the adoption statute does not dispense with notice to a natural parent in adoption proceedings, and if construed otherwise is unconstitutional. It is insisted that as appellant did not give his consent and had no notice of the proceedings the court was without jurisdiction to make the order of adoption. A great deal of argument has been made concerning section 9478 N. C. L. of the adoption statute as amended in 1933, c. 16, but we are of the opinion that the facts of this case do not bring it within the purview of any of the exceptions of that section. No order of a juvenile court was involved herein, nor was any essential to give the court jurisdiction to make the order of adoption. The case is governed, we think, by section 9481 N. C. L. of the adoption statute, which reads: "If the persons whose consent is necessary to the adoption of the child are not within this state, their consent, in writing, if they be known

and their whereabouts can be ascertained, must be obtained and filed with the judge, duly executed and acknowledged, in like manner as conveyances of real estate are required to be executed and acknowledged; *provided,* that if the judge shall find that the person or persons whose consent is required have abandoned such child, or if such persons are unknown, or their whereabouts cannot be ascertained, then in that case the judge may, in his discretion, proceed to make the order of adoption without such consent; but in that case it shall be the duty of the judge to cause to appear before him, by citation or otherwise, the persons in whose custody the child is, and may also bring before him, in his discretion, such of the next friends of the child as he may deem proper, and shall examine them under oath, and if he deem it for the best interest of the child, he shall make the order of adoption."

Here the court found that the appellant had abandoned his child, which under the plain terms of the provision dispensed with his consent. Consent of or notice to delinquent persons or person is not required by the section. Jurisdiction of the court is predicated upon consent of the persons whose consent is necessary (in this case the natural parents) or its procedural equivalent abandonment. The entire subject of adoption being one for appropriate legislation, it was competent for the legislature to prescribe what acts or conduct would dispense with a parent's consent to adoption proceedings. Therefore we hold that the presence of these statutory factors in this case, the mother's consent and the father's abandonment, was sufficient to confer jurisdiction on the court. 2 C. J. S., Adoption of Children, sec. 21, p. 387.

Appellant's counsel cite many cases in support of his contention that notice in this case was essential to give the court jurisdiction to make the order of adoption. We will not undertake to analyze them in detail and unnecessarily prolong this opinion. Suffice it to say that in some of them notice was required by the particular

statute, which, of course, made it a jurisdictional requisite. As to those which hold notice essential as to a parent who had abandoned a child, although not expressly required by the adoption statute, we think the facts of this case will distinguish it from them.

It is argued extensively that if it was the intention of the statute that notice could be dispensed with as to a parent who had abandoned a child, it is unconstitutional. Adoption statutes dispensing with the consent of natural parents and notice to them have been held constitutional. See 1 Schouler, Domestic Relations, sec. 720; 1 C. J. 1372; 2 C. J. S., Adoption of Children, sec. 5, and cases referred to in the notes. As was said in Hersey v. Hersey, 271 Mass. 545, 171 N. E. 815, 818, 70 A. L. R. 518: "The Legislature has wide discretion in determining the acts or conduct of a parent which may forfeit this right to notice or dispense with it."

However, it is unnecessary to determine the question here, for the conduct of appellant as shown by the record has been such as to preclude him from being heard in this regard. In Jackson et ux. v. Spellman, 55 Nev. 174, 28 P. 2d 125, 91 A. L. R. 1381, we recognized that estoppel may operate against a delinquent parent in an adoption case. It is well settled that estoppel may operate to cut off a right or privilege conferred by statute or the constitution. 19 Am. Juris. 640; 12 C. J. 769; see also 16 C. J. S., Constitutional Law, sec. 88. The abondonment in this case has been inveterate.

The undisputed evidence taken on the motion to set aside and nullify the order of adoption proved a settled purpose on the part of appellant to forego all parental duties and relinquish all parental claim to the child. He announced his intention in unequivocal language to his former wife and her attorney on December 16, 1937, after he had failed to keep his appointment with them to discuss the future welfare of the child. His conduct thereafter conclusively proves that his express renunciation, which was followed by abandonment in fact, was not idly made. He severed all connection with his child

and willfully neglected to pay any further weekly allowances for its support when such allowances were needful for its care, maintenance and education, and he was amply able to pay. He made no effort to communicate with his offspring, sent no token of affection or remembrance, and all attempts to contact him in its behalf proved futile. Against his progeny he had resolutely set his face. It appears that these facts were before the court when the order of adoption was made. After almost seven years of such unnatural conduct appellant filed the motion now under consideration. He made no appearance in person on the hearing of the motion to give any excuse for his failure to provide, or to defend against the charge of abandonment, or to express any feeling of repentance; thus depriving counsel for respondent of the opportunity to cross-examine him as to any testimony he might have given and as to the affidavit made in support of the motion. He was in default for many weekly allowances but made no offer to pay any of them. His claim that he was justified in making no more payments for his child's support and education because the mother by her remarriage had created a condition preventing him from having the benefit of the visitations between himself and child agreed upon, is a vain excuse. As if marital discord, hurt feeling, a desire for retaliation or anything of the kind ought to deter a father who is able from contributing to his child's support and education, and induce him to forsake it. Besides if the agreement was breached by him as he claims, the court in which the divorce was granted was open to him for redress at any time during the child's minority. It was not for him to do wrongful acts because, as he claims, his former wife had not done right. In the meantime the petition for adoption had been filed by respondent acting in good faith for the welfare of his wife's child, and the order of adoption made. New obligations for its care, custody, maintenance and education have been assumed, and ties of affection have been formed between the foster parent and the adopted

child. If it should be suggested that he was entitled to notice in order to have an opportunity to be heard on the charge of abandonment, it would be enough to reiterate that he had such opportunity on the hearing of his motion to set aside and nullify the order of adoption, but failed to appear and testify concerning it. Instead of pursuing the fair course he preferred to stand off across the continent and rest his case on his affidavit made in New York after having served notice that he would appear and give oral testimony on the hearing. As he did not appear in the latter instance it is highly conjectural as to whether he would have appeared in the first if he had received notice. Particularly is this so as an appearance at that time would have been somewhat embarrassing by bringing him within the jurisdiction of the divorce court when he was around $1,000 in arrears for child support. It is upon these facts that we hold an estoppel in this case and are of the opinion that it meets the ends of justice.

Pertinently was it said by Brewer, J., in Chapsky v. Wood, 26 Kan. 650, 40 Am. Rep. 321: "* * * When reclamation is not sought until a lapse of years, when new ties have been formed and a certain current given to the child's life and thought, much attention should be paid to the probabilities of a benefit to the child from the change. It is an obvious fact, that ties of blood weaken, and ties of companionship strengthen, by lapse of time; and the prosperity and welfare of the child depend on the number and strength of these ties, as well as on the ability to do all which the promptings of these ties compel."

That the ties of companionship fostered for over five years have gained ascendency over the ties of blood in this case was manifested by the minor's replies under oath to questions by the court; that he had a good home; that if he were to make a choice he would want to live with Mr. Burke; that he was well satisfied that he was his adopted son; and that he was treated in every way as though he was his own son.

A new father had in fact displaced a recreant parent. One who so callously deserts his only child, withholding his care, support, affection, interest and whereabouts for the long span of years shown by this record, ought not to be heard to complain about lack of notice of steps taken to promote its welfare when that welfare has been long guarded and promoted as so truly attested.

■   There is no merit in the contention that abandonment was not proved because it did not appear that the child was left in a destitute condition. As employed in the section before us, the abandonment contemplated "means neglect and refusal to perform the natural and legal obligations of care and support. If a parent withholds his presence, his love, his care, the opportunity to display filial affection, and neglects to lend support and maintenance, such a parent relinquishes all parental claim and abandons the child." In re MacLean, 109 Misc. 479, 179 N. Y. S. 182, 183. Such is the situation presented by the record in this case and in addition an expressed intention of abandonment. That the child must be left in a destitute condition is not an essential element. However, it appears that the weekly allowances provided for in the decree of divorce were needful for the maintenance and education of the child.

The order denying the motion to set aside and nullify the order of adoption is affirmed.

ON PETITION FOR REHEARING

March 12, 1946.

*Per Curiam:*

Rehearing denied.