### REBSTOCK v. REBSTOCK.

(Supreme Court, Special Term, Erie County. November 28, 1913.)

1. DIVORCE (§ 93*)—COMPLAINT—ALLEGATIONS OF GROUNDS OF DIVORCE—CERTAINTY.

Under Code Civ. Proc. § 1764, providing that the complaint in an action for a separation must specify particularly the nature and circumstances of defendant's misconduct and set forth the time and place of each act complained of with reasonable certainty, where the matters are not alleged with reasonable certainty as to the nature and circumstances or as to the time and place of each act, the complaint is insufficient.

[Ed. Note.—For other cases, see Divorce, Cent. Dig. §§ 292–307; Dec. Dig. § 93.*]

2. DIVORCE (§ 93*)—COMPLAINT—ALLEGATIONS OF GROUNDS OF DIVORCE—CERTAINTY.

In a husband's action for a separation, a complaint alleging that the wife threw a frying pan at him hitting him on the shoulder, with no allegation that he was injured or felt any fear of injury or even that his clothes were injured, that he did not induce the alleged assault, or that it was not merely in fun, did not state a cause of action for cruel and inhuman treatment.

[Ed. Note.—For other cases, see Divorce, Cent. Dig. §§ 292–307; Dec. Dig. § 93.*]

3. DIVORCE (§ 93*)—COMPLAINT—ALLEGATIONS OF GROUNDS OF DIVORCE.

In a husband's action for a separation, a complaint alleging that while scrambling eggs the wife threw the frying pan with the eggs in it at him

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

and hit him, that the eggs went all over him, and that he had to have his clothes cleaned, with no allegation that the act was not induced by some overt act or insulting language on his part, was insufficient to state a cause of action for cruel and inhuman treatment.

[Ed. Note.—For other cases, see Divorce, Cent. Dig. §§ 292–307; Dec. Dig. § 93.*]

4. DIVORCE (§ 27*) — GROUNDS — "CRUEL AND INHUMAN TREATMENT" — "CRUELTY."

Under Code Civ. Proc. § 1762, authorizing a separation for cruel and inhuman treatment, "cruelty" involves the idea of wantonness, and the act must be done willfully and for the purpose of inflicting suffering, and mere impulsive acts at long intervals of time, especially when perpetrated by a hysterical woman, do not constitute "cruel and inhuman treatment."

[Ed. Note.—For other cases, see Divorce, Cent. Dig. §§ 27, 62–83; Dec. Dig. § 27.*

For other definitions, see Words and Phrases, vol. 2, p. 1765; vol. 8, p. 7624; vol. 2, pp. 1768–1777; vol. 8, p. 7624.]

5. DIVORCE (§ 27*)—GROUNDS—STATUTORY PROVISIONS.

Code Civ. Proc. § 1762, subd. 2, authorizing a separation for such conduct on the part of the defendant toward plaintiff as renders it unsafe and improper for the former to cohabit with the latter, is intended as a protection to the wife rather than the husband, since, while a wife might be forced to submit to cohabitation, a husband cannot be compelled to continue cohabiting with his wife.

[Ed. Note.—For other cases, see Divorce, Cent. Dig. §§ 27, 62–83; Dec. Dig. § 27.*]

6. DIVORCE (§ 93*)—COMPLAINT—SUFFICIENCY.

In a husband's action for a separation because of conduct rendering it unsafe and improper for him to cohabit with his wife, complaint *held* insufficient to state a cause of action.

[Ed. Note.—For other cases, see Divorce, Cent. Dig. §§ 292–307; Dec. Dig. § 93.*]

7. DIVORCE (§ 93*)—COMPLAINT—ALLEGATIONS OF ABANDONMENT.

In a husband's action for a separation, a complaint alleging that his wife without cause and without his consent abandoned him, saying she was going away for her health, but that she wrote a relative that she was going to get a divorce, that her lawyer advised her to go to California or Colorado, that she went to these places and then came back, that thereafter she went to Cleveland, from which place a lawyer wrote the husband that he had been retained to commence an action and that if he would pay alimony that would be all there was of it, that soon thereafter she came back to Buffalo where the husband resided and then went to Manlius, where she stayed for a long time, did not state a cause of action for abandonment.

[Ed. Note.—For other cases, see Divorce, Cent. Dig. §§ 292–307; Dec. Dig. § 93.*]

8. DIVORCE (§ 93*)—COMPLAINT—ALLEGATIONS OF ABANDONMENT.

In a husband's action for a separation, a complaint which, after alleging absences by the wife from the husband's home without showing an abandonment, alleged that in June, 1913, she came to B., where the husband resided, and lived with her mother, where she was living at the time of the commencement of the action, that the husband had frequently asked her to return to his home, that he had prepared a place for her, and that she declined to live with the husband, did not state a cause of action for abandonment, since it failed to show that the wife went away without justification or with no intention of returning, and the allegations that the husband had frequently asked her to return might be referred to her absences prior to June, 1913; and under Code Civ. Proc. § 1764, requiring

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the complaint to specify particularly the nature and circumstances of the defendant's misconduct, and set forth the time and place of each act complained of with reasonable certainty, the complaint could not be helped out by intendment.

[Ed. Note.—For other cases, see Divorce, Cent. Dig. §§ 292–307; Dec. Dig. § 93.*]

9. DIVORCE (§ 37*)—GROUNDS—"ABANDONMENT."

Under Code Civ. Proc. § 1762, authorizing a separation for the abandonment of the plaintiff by the defendant, "abandonment" contemplates a voluntary separation by one party from the other without justification with the intention of not returning.

[Ed. Note.—For other cases, see Divorce, Cent. Dig. §§ 27, 107–134, 136–138; Dec. Dig. § 37.*

· For other definitions, see Words and Phrases, vol. 1, pp. 4–13; vol. 8, p. 7559.]

Action by Joseph E. Rebstock against Elvira C. Rebstock. On demurrer to the complaint. Demurrer sustained.

Hickman, Palmer & Houck, of Buffalo, for plaintiff.
Potter & Potter, of Buffalo, for defendant.

WOODWARD, J. This is an action brought by the husband for a separation, and it is evident from the complaint that the pleader has forgotten the Code requirement that such an instrument shall give a "plain and concise statement of the facts, constituting each cause of action, without unnecessary repetition," for the complaint contains over 40 folios of matter, a large portion of which has no relevancy whatever to any issue which might be supposed to be litigated in an action of this character.

"It were infinite for the law to consider the cause of causes, and their impulsions one of another; therefore it contenteth itself with the immediate cause and judgeth of acts by that, without looking to any further degree." Bacon's Maxims, Reg. 1.

But the pleader in this case gives up the first six folios of his complaint to the allegation of the marriage of the parties and the alleged misconduct of the defendant's father prior to such marriage. The defendant has demurred to this complaint upon the grounds that the court has not jurisdiction of the subject-matter of the action, and that the complaint does not state facts sufficient to constitute a cause of action, and we are called upon to search this voluminous complaint to determine these questions.

We will assume, without examination, that the subject-matter of the complaint is for a judicial separation, and that this court has jurisdiction and will proceed at once to the question of the sufficiency of such complaint. The complaint makes allegations evidently intended to bring the case within the first three subdivisions of section 1762 of the Code of Civil Procedure, any one of which would justify the court in granting the relief prescribed by the statute. These are "cruel and inhuman treatment of the plaintiff by the defendant;" "such conduct on the part of the defendant toward the plaintiff as may render it un-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

safe and improper for the former to cohabit with the latter;" and "abandonment of the plaintiff by the defendant."

[1] We will consider the allegations of the complaint in connection with each of these clauses in their order, first calling attention to the requirement of section 1764 of the Code of Civil Procedure that the "complaint in such an action must specify particularly the nature and circumstances of the defendant's misconduct and must set forth the time and place of each act complained of, with reasonable certainty." These, we apprehend, go to the question of the sufficiency of the pleading, and, if it shall be found that in any of the matters alleged there is a lack of reasonable certainty as to the nature and circumstances or as to the time and place of each act, the complaint cannot be said to state a good cause of action for separation. As we have already pointed out, the first six folios of the complaint are devoted to matters which can have no possible bearing upon the conduct of the defendant after her marriage with the plaintiff; they all relate to her residence, the marriage, and the alleged conduct of her father while she was living at home. Folios 6, 7, and 8 relate to certain alleged extravagances of the defendant and to the transfer of certain real estate to her on which there was a mortgage, with a promise on the part of defendant that she would return it on demand, as well as to an alleged refusal of the defendant to permit the plaintiff to sell such premises under advantageous terms, and to the defendant causing the said mortgage to be foreclosed in such a manner as to result in the defendant receiving only about $1,000 on the transaction. How this could be construed in any manner to constitute cruel and inhuman treatment of the plaintiff is more than we are able to discover, and we are equally unable to understand how it could have any bearing upon the question of the plaintiff's safety in cohabiting with the defendant, nor yet upon the question of desertion. But in any event it fixes no time for any of the alleged misconduct, except that it is alleged that "within the two years last past defendant went to the attorneys for the holders of said mortgage" and induced them to foreclose the same, and this is hardly that degree of certainty which the statute requires.

The next allegation of the complaint is alleged to have occurred within four years last past and is to the effect that the defendant commanded the plaintiff not to use the lavatory upon the first floor of their home, clogging the sewer with papers, etc., a matter of such trifling importance as to have no bearing upon the issues.

The next grievance is that "on one occasion in their said home defendant threw a knife across the table at him," but when, or the nature and circumstances, are not more fully disclosed.

[2, 3] We get down now to the last part of the ninth folio, where the plaintiff for the first time reaches a definite date, and where, if ever, he sets forth facts which might be said to have relation to cruel and inhuman treatment. We will therefore set out the allegations in detail. They are as follows:

"That on October 25, 1910, plaintiff came home and found defendant in the kitchen and that she took a frying pan and threw it at him, hitting him on the shoulder; that on another occasion, in April, 1911, came home and found defendant scrambling eggs; that when defendant saw plaintiff she turned on

him and threw the frying pan ·with the eggs in it at him; that the pan hit plaintiff and the eggs went all over him, and that plaintiff had to have the suit of clothes, which he was wearing, cleaned; that on another occasion plaintiff was about to go down town, when defendant grabbed his hat, which was a new one, and struck him over the head with it and broke it; that on another occasion, when defendant asked plaintiff for money and he gave her all he had, she said that was not sufficient and grabbed his derby hat from his head and struck him over the head with it and broke it all to pieces· and stepped on it; that on another occasion, in one of her fits of hysteria, defendant went downstairs and took a nearly new fancy chair and started in yelling hysterically, slammed the chair on the floor, and broke it; that on another occasion defendant was seized by this frenzy, and that she went downstairs, took two pictures and their stands from tables they were on, and smashed them to pieces."

The above are the only allegations upon which any definite dates are fixed, which in any legitimate sense bear upon the question of cruel and inhuman treatment, and it is to be observed that only two dates are stated. The first of these is on the 25th of October, 1910, when "plaintiff came home and found defendant in the kitchen and that she took a frying pan and threw it at him, hitting him on the shoulder." There is no allegation that the plaintiff was injured, or that he felt any fear of injury, or even that his clothes were injured; there is no effort to "specify particularly the nature and circumstances of the defendant's misconduct;" and, so far as the pleadings go, the plaintiff may have induced the alleged assault, or it may have been merely in fun. The requirement of the statute is that there must have been "cruel and inhuman" treatment, and isolated instances of violence, the circumstances not being shown, are not sufficient. But we are told of another instance, about six months later, in April, 1911, when "plaintiff came home and found defendant scrambling eggs," and it is alleged that upon this occasion she threw the frying pan, with the eggs, at him; that the frying pan hit him; and that the eggs went all over his clothes, so that he had to have them cleaned. There is the same defect in this allegation that is pointed out in the former; there is nothing to indicate what the circumstances were; so far as the pleadings point out the act of the defendant may have been induced by some overt act, some insulting language, on the part of the plaintiff, and if this were the case the act would be neither "cruel or inhuman."

[4] Cruelty involves the idea of wantonness; that an act is done willfully and for the purpose of inflicting suffering; and mere impulsive acts at long intervals of time, especially when perpetrated by an hysterical woman, are not ordinarily understood as constituting what the law knows as cruel and inhuman treatment; and we are of the opinion that the complaint does not ·comply with the provisions of section 1764 in respect to these allegations. The remaining allegations, quoted above, are not given any date; they were merely "at another time"; and these surely do not come within the requirements.

The next allegation relates to a certain transaction in reference to an insurance policy, which obviously has no bearing upon any issue which might be involved here; and the following allegation is in reference to the alleged hysteria of the defendant for a "long time prior to the time when defendant abandoned the plaintiff, as hereinafter alleged,"

and has nothing to do with the merits of the case which the plaintiff is seeking to establish. Then follows an allegation about the plaintiff staying at home with his son while his wife went to a party and of her coming home in an intoxicated condition, but no date is fixed, except that it was "since their said marriage," which occurred about 15 years ago. There is another story about the defendant going to the Iroquois hotel with a party of lady friends and drinking a cocktail, but no time is fixed; and then the narrative goes to the summer of 1911, when, after defendant and her sister had taken the son of the parties to picture shows for some time, she decided to change the policy, and the parties appear to have had some words about it, and the plaintiff insisted on letting the boy attend the shows at intervals, and at one time defendant is said to have locked the boy out of the house for a short time and to have behaved unbecomingly when the plaintiff brought the boy into the house, but the matter seems to have been nothing more important than an hysterical outbreak on the part of the defendant, not reaching to the dignity of cruel and inhuman treatment, as that term is understood in law. We are clearly of the opinion that the complaint fails to show a cause of action upon this branch of the case.

[5] The pleader then continues that the "plaintiff further alleges that he believes that the facts relating to the defendant herein indicate that she is of unsound mind and that if he were to continue to live with her she would do him bodily harm," but this is not one of the causes for separation. The fears of the plaintiff do not constitute a cause of action for cruel and inhuman treatment, while subdivision 2 of the section 1762 of the Code of Civil Procedure merely provides that where there is "such conduct, on the part of the defendant toward the plaintiff, as may render it unsafe and improper for the former to cohabit with the latter," which is obviously intended as a protection to the wife rather than the husband, for we know of no law which compels a husband to cohabit with his wife against his will and inclination. The language of the statute is that it must be both "unsafe and improper" for the plaintiff to cohabit with the defendant in order to assert a cause of action; and, while the wife might be forced to submit, no such compulsion could be brought to bear upon the husband; and, if there is any reason which is sufficient in his judgment to warrant a discontinuance of cohabitation, there is no way of compelling him to do violence to his judgment.

[6] The complaint then alleges that the plaintiff has taken the defendant to a number of doctors, and that he has been advised that she is not of sound mind, and that she should be cared for, and continues by alleging over again the alleged hysterical condition of the defendant, that she has nagged him, interfered with his business, his health, etc.; but these are clearly matters involved in the "better or worse" which is contemplated in the marriage contract and do not constitute actionable misconduct on the part of the defendant, whose condition appears pitiable rather than open to special censure. No dates are fixed, no special circumstances are set forth, and the plaintiff then alleges that during "all the times herein mentioned, particularly during

the six years last past, the defendant has been guilty of such conduct on the part of the defendant towards the plaintiff as may render it unsafe and improper for the plaintiff to cohabit with the defendant;" but as we have already pointed out, if this is so, the plaintiff has the matter entirely in his own control.

The complaint then goes back before the marriage, goes into a financial statement in reference to the plaintiff's affairs, recites the details of the wedding trip and of alleged idiosyncrasies on the part of the defendant, and finally alleges that "on one occasion, about six years ago, defendant, without any cause, became angered and grabbed a fancy brass clock and threw it across the room and smashed the clock all to pieces," and that on "another occasion, about five years ago, defendant took plaintiff's watch from under his pillow at night and threw it across the room and broke it;" but, while these things might be irritating to the plaintiff, they do not support the cause of action attempted to be asserted, nor is there any relevancy in the matters alleged about her change of wardrobe upon her brother's death, or her alleged prodigality in selling old clothes, or demanding to be entertained at high-priced hotels. Likewise we know of no law which deprives a woman of the liberty of threatening to commit suicide, at least in so far as the rights of the plaintiff are concerned, and clearly the remarks of the defendant's father to the plaintiff in reference to his daughter's threats are not relevant to any question which could be presented in such an action, and the trivial story about the defendant staying all day in the cellar ought not to be made a matter of pleading, nor is the cause of justice interested in the alleged freaks of the defendant in getting up and going out upon the balcony in her night clothes, and her subsequent repentances and acts of endearment. Here the plaintiff realleges his fears that it is not "safe or proper for him to live and cohabit with the defendant" and tells of another alleged peculiarity on the part of the defendant in hiding money about the house, which does not appear to have wronged any one in particular. This is followed by nearly two pages of absolutely irrelevant details as to the financial condition of the defendant, what the plaintiff did in the way of complying with her requests to go to different places; and, as we have already suggested, the complaint is barren of any facts which would bring it within the letter or the spirit of subdivision 2 of section 1762 of the Code of Civil Procedure.

[7] We come down, then, to the alleged abandonment of the plaintiff. The complaint alleges that:

"In or about the month of October, 1911, the defendant without any real or probable cause, and without the consent of this plaintiff, abandoned him and withholds from him her society and her company, to which he is entitled by reason of their said marriage."

This allegation is qualified, however, by the further allegation that:

"In October, 1911, defendant went away from the plaintiff's house and said she was going to make a little trip for her health, and that she would come back as soon as she felt better; that she wrote to a relative by marriage and told her that she was fooling plaintiff; that he expected she was going on a trip for her health but that she was really going away to get a divorce; that defendant said her lawyer advised her to go to California or Colorado, and

that she was going to get a divorce; that she went to these places and was gone a long time and then came back; that thereafter she went to Cleveland, and that soon after she had been there, and within six months prior to the commencement of this action, a lawyer wrote to plaintiff, telling him that he had been retained by the defendant to commence an action; that alimony was the only question in the matter, and that if he would agree to pay the defendant alimony that would be all there was of it; that soon thereafter defendant came back to Buffalo and went to Manlius in New York and stayed there for a long time."

Obviously there was no abandonment in this: The defendant went away, promising to return, and did return. There is no allegation that she went to Cleveland without the consent of the plaintiff, or that she did not have cause to go, or that the alleged lawyer was in fact retained by the defendant; nor is there any allegation that the defendant, when she came back to Buffalo, did not return to her home, as she would be presumed to have done, no allegation being made to the contrary; nor is there any suggestion that in going to Manlius she was acting contrary to the will of her husband. Down to this time, therefore, the complaint does not show abandonment.

[8] The actionable misconduct of the defendant, if any, must be found in the allegation:

"That in or about June, 1913, defendant came to Buffalo and lived with her mother and is so living with her mother at the time of the commencement of this action; that plaintiff has frequently asked defendant to return to his home, and that he prepared a place for her and notified her that he had so prepared a place where they might live, and that she declined and refused so to do, and that ever since she has declined and refused to live with the plaintiff as husband and wife or in any manner."

[9] Abandonment, as used in the statute now under consideration, contemplates a voluntary separation of one party from the other, without justification, with the intention of not returning. Williams v. Williams, 130 N. Y. 193, 197, 29 N. E. 98, 14 L. R. A. 220, 27 Am. St. Rep. 517. There is no allegation in connection with the incident of June, 1913, that the defendant went away from the plaintiff without justification, and without intending to return; we are simply told that she came back to Buffalo and went to live with her mother, and that she was living with her mother at the time the action was commenced. The plaintiff alleges that he has frequently asked defendant to return to his home, but without specifying "particularly the nature and circumstances of the defendant's misconduct," nor "setting forth the time and place of each act complained of, with reasonable certainty." All of the matters alleged in reference to the plaintiff having requested the defendant to return to his home may have been made while she was away prior to June, 1913. There is not an allegation, giving date and circumstances, in which the plaintiff tells us that he requested the defendant to return to him after June, 1913, and the requirement of the statute in cases of this character forbids that we should help out the pleading by those liberal rules which are prescribed in ordinary actions. In matrimonial actions the law requires the allegations to be made with particularity, and they are not to be helped out by intendment. Moreover, if the next allegation of the complaint is true, and the demurrer concedes it for the purposes of the demurrer, there would

seem to be a good reason for the defendant living apart from the plaintiff, particularly in view of the oft-expressed fear of the latter that it may be dangerous or improper for him to cohabit with her. The concluding allegation is that "the plaintiff further alleges on information and belief that defendant is, and for a long time before the commencement of this action has been, out of her mind and is a person incompetent to manage herself or her affairs in consequence of lunacy."

Assuming the lunacy of the defendant for a "long time before the commencement of this action," she is not responsible for her alleged refusals to live with the plaintiff, and, the latter not having shown any proper allegations for an action for separation, the demurrer is sustained. We reach this conclusion entirely apart from the plaintiff's prayer for relief, which we conceive to be a part of the complaint. The pleader apparently proceeded upon the theory that, by showing a state of facts which would disclose unpleasant relations between the parties, he was entitled to a sort of mental accounting on the part of the defendant, and, if she established that she was sane and accountable for her conduct, then the plaintiff would be entitled to relief. The demand for justment is that "the defendant be examined by and under the direction of this court to ascertain her mental condition in the manner prescribed by law and the Code of Civil Procedure, and, if she shall be found to be sane and in a sound mental condition, that he be awarded judgment or decree of separation herein, separating the plaintiff from the bed and board of defendant forever, and that the custody of their said child be awarded to the plaintiff," etc. He asks no relief whatever if the defendant is insane, as he alleges her to be, and as the demurrer admits, assuming the allegation of insanity to be material to the cause of action attempted to be alleged, and the entire complaint is such as to fully justify the conclusion that no cause of action has been asserted.

The demurrer should be sustained, with costs.