THE CITY OF NEW YORK, Acting by the TRANSIT COMMISSION, METROPOLITAN DIVISION, DEPARTMENT OF PUBLIC SERVICE OF THE STATE OF NEW YORK, Plaintiff, *v.* INTERBOROUGH RAPID TRANSIT COMPANY, Defendant.

Supreme Court, New York County, August 10, 1929.

*George H. Stover*, general counsel [*Samuel Untermyer* and *Charles Dickerman Williams*, special counsel], for the Transit Commission.

*James L. Quackenbush* [*Charles E. Hughes*, *William L. Ransom*, *Allen S. Hubbard*, *Jacob H. Goetz* and *John Fletcher Caskey* of counsel], for the defendant.

FRANKENTHALER, J. This is an action begun on February 17, 1928, by the Transit Commission, acting on behalf of the city of New York, as plaintiff, to enjoin the defendant Interborough Rapid Transit Company from charging a fare in excess of five cents on the subway and elevated lines operated by it in the city of New York. The prosecution of the action was thereafter stayed in suits brought by the Interborough Company in the United States District Court for the Southern District of New York. The order granting the stay was, however, reversed on appeal to the United States Supreme Court and the suits in the Federal court were dismissed, though not upon the merits. All obstacles to the progress of the present action were thus removed and on or about June 19, 1929, issue was joined by the service of the defendant's answer.

The plaintiff now moves " for an order herein severing the issues of law and fact relating to the binding and conclusive effect of the fare provisions of the contracts, known as Contract No. 3 and the Elevated Extension Certificate, for separate trial and determination, before there is a trial and determination, if ever, of the issues of law and fact upon which the defendant bases its claim of confiscation and its affirmative defenses as set forth in its answer." In short, the plaintiff asks that the issues of whether the contracts for operating the transit lines impose an inflexible rate of fare and whether certain acts of the city have estopped it from enforcing the fare provisions of the contracts be separated from the other issues raised in the litigation, and that they be determined in advance of the trial of those issues. In order to decide the question of procedure thus presented it becomes necessary to examine the pleadings, consisting of the complaint and answer.

The complaint alleges that on March 19, 1913, the city of New York entered into two contracts with the Interborough Rapid Transit Company, one known as Contract No. 3, relating to

subways, and the other, described as the Elevated Extension Certificate, affecting elevated lines; that each of these contracts stipulated that the fare was to be "the sum of five cents but no more;" that the provisions of said contract and certificate are still in full force and effect; that the Interborough Rapid Transit Company has filed with the Transit Commission revised tariff sheets setting forth its intention to charge a seven-cent fare, and that the proposed fare increase would violate the aforesaid contract. Accordingly judgment is sought compelling the Interborough Company to specifically perform the contract and certificate, and enjoining it from charging a fare in excess of five cents. The answer admits most of the allegations of the complaint, subject, however, to the qualification that Contract No. 3 and the Elevated Extension Certificate "have been at all times and now are subject to the exercise by the appropriate commission of its powers, duty and authority under the Public Service Commission Law." A number of relatively unimportant allegations of the complaint are also traversed.

Five affirmative defenses are interposed, the first of which relates to the elevated lines and alleges that a radical and unanticipated change in conditions has taken place since the Elevated Extension Certificate was made which renders a five-cent fare unreasonable and confiscatory; that the provisions of the Public Service Commission Law which require the rates of all carriers to be fair and reasonable form part of the certificate, and that said statute entitled the defendant to charge an adequate or compensatory fare.

The second defense contains corresponding allegations as to the subway lines, and the third sets forth the same facts as to both the subway and elevated lines considered as a unified system.

The fourth defense alleges various facts which it is claimed estop the plaintiff from enforcing in equity the provisions of the contracts calling for a five-cent fare. It alleges among other things that it was implied and understood at the time the contracts were entered into that the city would not itself become an operator of competing lines and that in disregard of this alleged understanding the city has entered upon the construction of competitive rapid transit facilities paralleling many of the routes operated by the defendant transportation company.

The fifth and last defense virtually constitutes a denial of the bill.

In support of this motion for a severance of the issues relating to the binding effect of the aforesaid contracts and their enforcibility in equity the plaintiff contends that if such a severance be granted and these issues be determined in its favor it will be unnecessary to try the question of whether or not the five-cent fare is sufficient

to yield a reasonable return on the defendant's investment, thus obviating the expenditure of much time and money in the preparation for and actual trial of the claim that the five-cent fare is inadequate and confiscatory. The probability that the issues of which a severance is sought will be determined in the city's favor, counsel claims, is portended by the following language of the United States Supreme Court in *Gilchrist* v. *Interborough Rapid Transit Company* (279 U. S. 159, at p. 209): " Both the bill of complaint and the argument of counsel here proceed upon the theory that under the law of New York, as clearly interpreted by definite rulings of her courts, the contracts for operating the transit lines impose no inflexible rate of fare. With this postulate we cannot agree."

The motion is made under sections 96 and 443 of the Civil Practice Act. Section 96 provides that " An action may be severed and actions may be consolidated whenever it can be done without prejudice to a substantial right."

The derivation of said section and the cases decided thereunder render it apparent that it was never intended to authorize the segregation from pleadings relating to a *single* cause of action of certain issues for separate trial in advance of other issues. The severance contemplated by section 96 is that of one or more causes of action from one or more other causes of action, or of claims by or against one or more parties from claims by or against one or more other parties. None of the cases decided under section 96 of the Civil Practice Act or under its predecessor sections (Code Civ. Proc. § 1220, and Id. § 497, last sentence) have, as far as I have been able to discover, authorized the severance of certain issues from other issues where the complaint contained a single cause of action by a sole party plaintiff upon which only one judgment could be entered and where the answer of the single party defendant contained nothing which could lead to a separate and distinct judgment. A severance under section 96 of the Civil Practice Act is such a segregation of issues as makes possible two or more separate judgments. No such severance is asked for upon this motion.

A different situation is, however, presented by section 443 of the Civil Practice Act, subdivision 3 of which reads as follows: " The court, in its discretion, may order one or more issues to be separately tried prior to any trial of the other issues in the case."

That subdivision has been repeatedly construed as authorizing a separate trial of segregated issues where a determination of those issues in one way would render the trial of the remaining issues unnecessary and thus put an end to the litigation.

As was said in *Smith* v. *Western Pacific Railway Company* (144 App. Div. 180, 181; affd., 203 N. Y. 499), with regard to section 973 of the Code of Civil Procedure, which is now subdivision 3 of section 443 of the Civil Practice Act: "The section can be most usefully applied to the case of an issue which if determined in one way will end the litigation and render a trial upon the merits unnecessary."

Generally, it is true, subdivision 3 has been invoked in connection with the trial of pleas in bar such as the Statute of Limitations, pleas to the jurisdiction and defenses of *res adjudicata*. However, there is nothing in the wording of the subdivision which restricts its application to such issues, and it does not appear that the authorities construing the statute have definitely fixed any such limitation.

A decision of the questions of the binding force of the contract and the claimed estoppel would be dispositive of the entire action with the exception of the defenses of confiscation, and if contrary to defendant's contention it would be determinative of the entire controversy. This is rendered clear by the following language of Chief Justice White in the case of *Southern Iowa Electric Company* v. *City of Chariton* (255 U. S. 539, at pp. 541, 542):

"Two propositions are indisputable:

"(a) That although the governmental agencies having authority to deal with the subject may fix and enforce reasonable rates to be paid public utility corporations for the services by them rendered, that power does not include the right to fix rates which are so low as to be confiscatory of the property of such corporations" [citing cases], and

"(b) that where, however, the public service corporations and the governmental agencies dealing with them have power to contract as to rates, and exert that power by fixing by contract rates to govern during a particular time, the enforcement of such rates is controlled by the obligation resulting from the contract, and, therefore, the question of whether such rates are confiscatory becomes immaterial." (Citing cases.)

The desirability of a course which would render it possible to try such preliminary questions in advance is too apparent to require extended discussion.

If in this action it should be found that the contracts are subject to regulation as to fare by the Transit Commission and that the rates therein specified are not unchangeable it would be necessary to try the defense of confiscation in order to determine whether the defendant is entitled to an increased fare. If, however, the contracts are adjudged to be legally binding in their restriction of rates, but estopping circumstances should be found to exist,

thus preventing their enforcibility by a court of equity, the same result would follow. On the other hand, if it should be held that the contracts are legally binding in their guaranty of a five-cent fare and that the city's alleged competition does not preclude their enforcibility in equity, any consideration of the defenses of confiscation would be superfluous and a disposition thereof would become immaterial. The litigation would *ipsa facto* terminate in favor of the city.

It is, therefore, clear that the action divides itself into two main features, viz., the enforcibility of the five-cent fare limitation and the question of confiscation, and that the necessity for the trial of the latter hinges upon a determination of the former.

Having in mind the complexity of the questions involved in the defenses of confiscation, the manner and method of their detailed and technical proof, the type of evidence to be considered, and the amount of time and labor entailed both in the trial and in the determination of the issues raised by that defense, there can be little question but that the enforcibility feature lends itself to much less expensive and much more expeditious presentation and disposition.

Judicial notice may be taken of the large number of rate cases heretofore considered by the courts where experience has demonstrated the magnitude of the labors involved and the length of time required to analyze intelligently and accurately the technical evidence presented. These cases of necessity impose upon the court and require for consideration a mass of statistical and economic data which demonstrate the futility of any hope or expectation of an expeditious solution. (*Newton* v. *Consolidated Gas Company*, 258 U. S. 165, and consolidated cases; *Bronx Gas & Electric Co.* v. *Public Service Comm.*, 195 App. Div. 554.)

As Judge CARDOZO (now chief judge) well said in *Municipal Gas Company* v. *Public Service Commission* (225 N. Y. 89, at p. 101), "there are complicated accounts to be unraveled, receipts and disbursements to be classified and distributed, the properties and transactions of a great business to be appraised and dissected."

With these considerations in mind, it would be difficult indeed to find a more appropriate case for the application of subdivision 3 of section 443 of the Civil Practice Act than the instant one. It not only falls within the literal language of that subdivision but it accords with its spirit and purpose as declared by our courts. The section was designed to avoid unnecessary delay. It vested in the court discretion to determine where such delays might be possibly avoided. I see no reason for permitting that design to be frustrated here *Public interest itself demands that this discretion be exercised.*

The motion for a severance and prior trial of the segregated issues is accordingly granted and the trial thereof preferred for the 7th day of October, 1929.

It has been suggested that a trial of all the issues may be obviated by appointing a referee to hear and decide the litigation *in toto*, citing *Bronx Gas & Electric Company* v. *Public Service Commission* (*supra*). No application for that relief is, however, pending before me nor may a compulsory reference be ordered as to the severed issues. Should both parties request my designation of a referee they may so indicate by filing a writing to that effect upon the settlement of the order.

Settle order on notice.