In the Matter of the Estates of Edna Hess, Deceased, and Betty Lou Hess, Deceased.

Surrogate's Court, Monroe County, March 29, 1932.

*J. E. Goddard*, for the respondent.

*William MacFarlane*, for the administratrix.

Feely, S. On July 29, 1930, these two infants were killed in a gas explosion that wrecked their home in Fairport, N. Y. Both father and mother survived them. The mother, having been appointed administratrix, effected a compromise of the statutory cause of action for negligence causing their respective deaths (Dec. Est. Law, § 130, as added by Laws of 1920, chap. 919), brought on these proceedings to settle her accounts and distribute the damages so recovered. There is now in court a little less than $4,200 in one case and $1,100 in the other. In these proceedings the mother alleges that the father is not entitled to share with her therein, by reason of the exception in the statute (Dec. Est. Law, § 133, subd. 2, added by Laws of 1920, chap. 919, as amd. by Laws of 1929, chap. 229) that excludes from participation in such recovery a " father who has abandoned him, or who has left the maintenance and support of their child to the mother   *   *   *." In any such case, the statute declares, " the damages or recovery shall be for the sole benefit of such mother." (Dec. Est. Law, § 133, subd. 2.)

This, in effect, amounts to disinheriting the father, on the analogy that the net recovery is distributable like assets in intestacy. To

work this equivalent forfeiture, an adequate cause should be satisfactorily shown to exist. This requires us to construe the word "abandon" here in a strict sense. The dictionaries trace this word to the root idea of "putting under a ban;" whence the emphasis falls on the finality and the publicity with which some thing or body is thus put in the control of another; and hence the meaning of giving up absolutely, and with intent never again to resume or claim one's rights or interests; hence, to forsake entirely, to renounce utterly. So, in the law of property, this word "abandons" means "the relinquishing of all title, possession or claim," or virtually throwing away the property. (*Foulke* v. *N. Y. Consolidated R. R. Co.*, 228 N. Y. 269.) In its application to various domestic relations this word has much the same sense of absoluteness and finality. It means desertion of a spouse "with the intention of not returning" (*Heyman* v. *Heyman*, 119 App. Div. 182; *Silberstein* v. *Silberstein*, 218 N. Y. 525; *Domb* v. *Domb*, 195 App. Div. 526; *Rebstock* v. *Rebstock*, 144 N. Y. Supp. 289), or with the intent the marriage should no longer exist. (*Ruckman* v. *Ruckman*, 58 How. Pr. 278; *Dignan* v. *Dignan*, 17 Misc. 268.) It is this intention not to return that distinguishes temporary absence from abandonment (*Silberstein* v. *Silberstein*, 218 N. Y. 525), the latter term meaning that the spouse has "permanently" deserted the other. (Id. and see, also, *Doty* v. *Rensselaer County Mutual Fire Ins. Co.*, 194 App. Div. 841.)

With regard to the desertion of children, the same meaning is conveyed; and in the following cases absences of four, six and eight years, without seeing or helping the child, is deemed to be abandonment. (*People* v. *Dewey*, 23 Misc. 267; *People ex rel. Humex* v. *Phelps*, 58 id. 625; *People ex rel. La Forte* v. *Rubin*, 98 N. Y. Supp. 787.)

The application of this word to quasi-criminal cases is colored somewhat by the fact that such procedure is aimed mainly at preventing the family falling to public charge (*People ex rel. Heinle* v. *Heinle*, 115 Misc. 469) by reason of the defendant having failed to do for them "according to his means." (*People* v. *De Wolf*, 133 App. Div. 879.)

In the statute above quoted (Dec. Est. Law, § 133, subd. 2) the same absolute meaning attaches by association to the word "left" in the phrase, "left the maintenance and support of their child to the mother, * * *."

The recovery for wrongful death is the pecuniary value of the interrupted life to the statutory distributees. Young children being more a liability than a present asset, the dependence of parents upon them is largely in expectancy, as a return for the support

and maintenance given the child until it grow up and be emancipated as to its own earnings. Obviously, if the parent has utterly cut the child off in that regard, he himself should be absolutely cut off. What Surrogate SLATER once said in another connection may be copied here to explain the meaning of this word: " The term ' abandonment ' means neglect and refusal to perform the natural and legal obligations of care and support. If a parent withholds his presence, his love, his care, the opportunity to display filial affection and neglects to lend support and maintenance, such a parent relinquishes all parental claim, and abandons the child." (*Matter of Hayford,* 109 Misc. 479; citing *Matter of Larson,* 31 Hun, 539.)

The nearest analogy to the case at bar is found in the provision of the statute that an adoption can be approved even without the consent of a parent who has " abandoned " the child. (Dom. Rel. Law, § 111, as amd. by Laws of 1924, chap. 323.) Here, also, a loss of the right to inherit from the child is the result, after he has been properly given " his day in court." In that class of cases the courts have had to do with this word " abandon;" and what they have said there seems almost decisive of the instant question. In *Matter of Bistany* (209 App. Div. 286; affd., 239 N. Y. 19) the court said: " The statute itself does not define the word ' abandoned.' In some jurisdictions, under similar statutes, it has been held to mean no more than neglect or refusal to perform the natural and legal obligations of care and support which parents owe to their children. In others, it has been taken to mean to renounce and forsake entirely." That case was very weak on the facts, so the court continued: " Without attempting, therefore, to define sharply what constitutes abandonment under subdivision 3 of section 111 of the Domestic Relations Law   *   *   *, we think, inasmuch as the fact seems to be intended as a substitute for consent, that the evidence should at least warrant an inference that the parents, at some point of time, definitely dropped their parental interests, duties and obligations. The question is one of fact, and, so strong are the ties of nature, the courts tend to exact a considerable degree of clearness and certainty in the proof of the renunciation." This *Bistany* case cites *Matter of Johnston* (76 Misc. 374), where there was no proof the father " thought of abandoning his son or permanently severing his natural relations with him or of surrendering his parental authority over him to any other person." The court also contrasts the case of *People ex rel. Cornelius* v. *Callan* (69 Misc. 187), where, although the husband had left the wife, he gave her his property and also sent her and the family substantial sums.

In *Matter of Schwaner* (212 App. Div. 825) the court follows

the same rule as to the degree of proof that is requisite in such cases.

For additional cases defining this abandonment, see *Matter of Davis* (142 Misc. 681, 690).

Now, what are the facts here? This father is by trade a piano finisher. His wages have run from twenty-eight dollars to forty dollars a week, according to business conditions. He and his wife have had twelve children, of whom eleven were living at the time of the explosion in July, 1930, which killed the baby, about two years old, and a young girl about nineteen. The oldest living child was then twenty-four. At this time the three oldest children were working, and each paid in five dollars a week. The rest were still in school and dependent. In no case was the employment steady or continuous. The father almost always turned into his wife's hands some considerable part of his earnings, as he made them and paid up gradually some old rent and grocery bills; but his fondness for liquor led to loss and quarreling, with the result that, upon her complaint, he spent several terms in the penitentiary, of less than six months each. About 1928 he was away for about a year, but returned to the family in the fall of 1929. For this and periods of several months he lived apart from his wife and family; but, for the most part, during those periods, he still shared his wages with his wife; and in the winter before the explosion he spent almost all of his week-ends with the family, bringing in supplies for them on each occasion. At various times the family was receiving some aid from the town in form of coal and rent. In May, 1930, he was sent up for 180 days; but was released July first on condition he stay out of town. Up until the explosion he had not found work. He is now out of work, and on the city.

On the whole, the task was a heavy one to provide, according to his means, for a family of eleven persons, on his average wage of thirty dollars, when he was getting work, with the extra fifteen that, at times, came in from whatever the children earned. Forty-five dollars a week spreads half a dollar a day per person. He might have done better, but the difficulty lies precisely in the fact that he also might have done much worse. He might, possibly, have stayed away altogether and contributed nothing at all, which would have constituted the " abandonment " contemplated by this statute as the ground of forfeiture and good cause to refuse him any participation in this recovery.

It has been argued that inadequate support is abandonment. It might still not be his fault that he either did not earn enough, or turn in all he could reasonably afford, in the circumstances.

I incline to the view taken by this father's counsel that while the respondent father may have disregarded the law of good economy, he did not violate the law of the State, because he did do considerable, intermittently, as much as could be expected of him, such as he is, toward the support of this family. The fact that he may not make a prudent use of a share in this money has no bearing on his right to it. The evidence lacks the clearness and certainty requisite to declare a forfeiture here.

Enter a decree in accord with this decision in each case.