In the Matter of the Guardianship of ELVA CLARKE, an Infant.

Surrogate's Court, Orange County, December 1, 1932.

*Ransom H. Gillett,* for petitioner, George M. Clarke.

*Clifford S. Beattie,* for general guardian.

*Daniel Becker,* special guardian.

TAYLOR, S. George M. Clarke, the petitioner, and his wife, Leslie Gordon Clarke, were married in the city of New York, November 25, 1915. There were two children born unto them,

Leslie, who died in 1931, and Elva, for whom a general guardian was appointed by this court in December, 1931. The petition for the appointment of the guardian made by the infant alleged her father had abandoned her and that she did not know his address.

The father has offered his testimony upon his application to intervene. It appears therefrom that he is now and for some-time past, and particularly during all of the year 1931, was in the hotel business at New Lebanon Center, Columbia county, in this State. Differences between husband and wife arose, and on April 27, 1926, the parties entered into the usual form of separation agreement upon the express consideration " of the sum of $1.00 to each party hereto by the other duly paid   *   *   *   and for the other considerations herein contained." The contract provided that the wife should have the sole custody of and control of the children " without any interference on the part of the party of the first part." Privilege to see the children at times convenient to the wife was therein given the husband. There was the further stipulation that if the parties should become reconciled the agreement should be void.

The parties corresponded, although the husband admitted most of the letter writing was on his own part, or, as he testified, " the correspondence was not answered as a rule." There was but one letter from the wife offered in evidence, Clarke testifying he was familiar with his wife's handwriting. In 1926 the witness sent his wife ten dollars which she returned. Other testimony was offered indicating efforts by Clarke to get into communication with his wife and that at one time, he testified, he endeavored, through attorneys in Warwick (where the parties lived at the time of the separation) to see the child.

Mrs. Clarke died in July, 1931, and her will was admitted to probate in Orange county in August, 1931. (See *Matter of Clarke,* 144 Misc. 705.)

Neither the painstaking research of counsel, nor my own efforts, has brought to light any reported case which can unquestionably be said to furnish a four-square precedent on the question of abandonment, in connection with dispensing with notice to a parent of an application for the appointment of a general guardian.

Cases under the criminal, or quasi criminal law, to require a husband to support his wife or children, wherein it is alleged that the husband abandoned the wife and children, furnish some guide but are not wholly controlling because, in those cases, not only are the two parties involved but the public is concerned lest the wife or children become public charges. (*Matter of Hess,* 143 Misc. 335, 336.)

"Abandonment is made up of two elements, act and intention. It includes both the intent to abandon and the external act by which the intent is carried into effect." (1 C. J. 6.)

In *Matter of Hess* (143 Misc. 335) in which was presented the question of whether the husband and father had abandoned his wife and children so as to preclude him from participation in an award of damages for negligently causing the death of his two children (See Dec. Est. Law, § 133, subd. 2), in interpreting the word " abandonment " in that statute, the court said, " in its application to various domestic relations this word has much the same sense of absoluteness and finality. It means desertion of a spouse with the intention of not returning."

Intent also played an important part in the decision of the cases of *Pompilio* v. *Pompilio* (129 Misc. 207); *Williams* v. *Williams* (130 N. Y. 193); *Heyman* v. *Heyman* (119 App. Div. 182); *People ex rel. Demos* v. *Demos* (115 id. 410); *Dignan* v. *Dignan* (17 Misc. 268); *Merchants National Bank* v. *Greenhood* (16 Mont. 395); *Matter of Kelly* (25 Cal. App. 651).

" The statutory notion of abandonment does not necessarily, we think, imply that the parent has deserted the child, or even ceased to feel any concern for its interests. It fairly may, and in our judgment does, import any conduct on the part of the parent which evinces a settled purpose to forego all parental duties and relinquish all parental claims to the child." (*Winans* v. *Luppie*, 47 N. J. Eq. 302, 304.)

The Standard Dictionary (1930 ed.) defines " abandon " as " to forsake or renounce utterly; to give up wholly; desert. To give over entirely to another; resign; yield."

"Abandonment " is defined in Bouvier's Law Dictionary (Baldwin ed.) as " the act of a husband or wife who leaves his or her consort willfully, and with an intention of causing perpetual separation."

The court in *Matter of Bistany* (209 App. Div. 286; affd., 239 N. Y. 19), after stating that an attempt would not be made to define sharply the word " abandonment " as used in section 111 of the Domestic Relations Law, held " that the evidence should at least warrant an inference that the parents, at some point of time, definitely dropped their parental interests, duties and obligations. The question is one of fact, and, so strong are the ties of nature, the courts tend to exact a considerable degree of clearness and certainty in the proof of the renunciation."

*Matter of Johnston* (76 Misc. 374) was a proceeding for the abrogation of an adoption. The husband and wife, after the serious illness of their child, returned to the home of the wife's parents

where the wife and child remained. After going to live with the wife's family differences arose between Johnston and his wife. The former secured employment as a musician which took him away from home and he did not return until his wife had died. Thereafter Johnston made arrangements with his mother for the care of the child and frequently communicated with his mother and sister, often referring to the child, but contributed very little money to the child's maintenance. It was said that it would be absurd to hold that the father had abandoned his child and that there was not the slightest proof justifying the inference that Johnston entertained a thought of abandoning his son or permanently severing his natural relations with him (p. 380).

In *People ex rel. Cornelius* v. *Callan* (69 Misc. 187) it appeared that Cornelius, after quarreling with his wife, left her, stating that he would not live with her again. On that day he delivered all his property to his father and directed that it be used for the support of his wife. While away Cornelius frequently corresponded with his father and forwarded him money for his wife's use. Thereafter the wife and child went to the home of defendants, her uncle and aunt. Defendants adopted the relator's child and in the proceeding alleged that the father had abandoned him. It was held that there was not an " abandonment " within the meaning of that term as used in the statutes relating to adoption.

There is authority for the proposition that " after a judicial separation at the suit of the wife the relation is so far terminated or suspended that the husband cannot be guilty of abandonment or desertion in any legal sense. The judgment operated to change the contract relations between the parties, and required them to live apart from each other * * *. It was no longer possible for him to discharge it in the sense that the marriage state contemplates." (*People ex rel. Comrs. of Charities* v. *Cullen*, 153 N. Y. 629.)

As hereinbefore stated, the parties separated by virtue of a separation agreement, and that fact makes quite pertinent the quotation from *City of New York* v. *Kaiser* (125 Misc. 637) that " the parting of the spouses was a separation by mutual consent and, therefore, that neither abandoned the other, according to the sense of the word abandonment, as used in the statutes relating to matrimonial duty."

The court of a sister State in *Bell* v. *Krauss* (169 Cal. 387) expresses the thought rather forcibly, thus: " The placing of the infant in charge of the mother was not such judicial deprivation of the custody of the child on account of the neglect of the father as is contemplated in section 224 of the Civil Code. Divorces are

not granted for offenses against children and the bestowal of the custody of a minor in a divorce action is not, unless otherwise provided by statute, an adjudication of the fitness of the parent who is for the time denied the right to retain possession of the child. It is nothing more than the expression of the court's belief that, under the circumstances then existing, the welfare of the child would be best subserved by placing said child with one of the parents rather than the other."

In the case under consideration the child having been of tender years at the time of the parents' separation, it was highly proper and in reality for the welfare of the child that, assuming there was sufficient ground for the separation of the parents, the custody of the child be with the mother. The differences were between the spouses and not between the father and his child. With the parents separated there could not of course be joint custody, and where the separation is by agreement, as here, and it not appearing that there were any financial difficulties to the mother and daughter getting along, it is not reasonable to charge the father with abandonment.

In those cases in which custody of children has been judicially awarded to the one parent it is held that on the death of the parent having such custody the surviving parent comes into all his rights with respect to the custody and control of his children, subject always, of course, to the welfare of the children. (*Matter of Thorne*, 240 N. Y. 444; *Bell* v. *Krauss*, 169 Cal. 387.)

In affording a parent the right to be heard upon an application in connection with appointing a guardian of his children "the primal instincts and the natural and legal rights of the parents may not be lightly brushed aside" (*Matter of Bistany*, 209 App. Div. 286; affd., 239 N. Y. 19), and "the natural parents are entitled to their day in court on the issue of whether or not the jurisdictional allegation of abandonment was true. This right has been held to exist under the Fourteenth Amendment of the Constitution of the United States." (*Matter of Davis*, 142 Misc. 681, 689.)

After reviewing the authorities I conclude that the petitioner has not abandoned his daughter Elva, and were it not for the matter to be next considered he should be permitted to introduce evidence as to his fitness to be substituted as guardian in place of the infant's uncle.

The petitioner's wife died in July, 1931, and her will was probated in Orange county in August, 1931. No citation in connection with that probate was served upon the husband for the reason alleged in the petition for probate that the petitioner therein did not know the husband's address. This proceeding has been opened

upon the husband's application, and supplemental citation issued, directed to him. (*Matter of Clark,* 144 Misc. 705.) Upon the return of the citation the husband appeared by counsel and has since interposed the usual objections to probate, and that matter is now awaiting agreement of counsel upon a trial date.

The will of Leslie Gordon Clarke devised all of her property to her executors in trust for the benefit of her daughters, Leslie Clarke and Elva Clarke, or the survivor of them. Elva Clarke alone survives so that she is the sole beneficiary under the will.

This court will take judicial notice of its own records, not only in the case before it, but in others and especially related cases. (*Devine* v. *Melton,* 170 App. Div. 280, 282; *City of New York* v. *Interborough R. T. Co.,* 134 Misc. 827, 832; *Franklin* v. *Leiter,* 149 App. Div. 678, 679; *O'Grady* v. *State of New York,* 118 Misc. 693, 696; *Freshman* v. *Atkins,* 269 U. S. 121, 124; *United States* v. *California Co-Operative Canneries,* 279 id. 553, 555; *Dimmick* v. *Tompkins,* 194 id. 540, 548; *Craemer* v. *State of Washington,* 168 id. 124; *Matter of Ordway,* 196 N. Y. 95, 97; *Vose* v. *Yulee,* 64 id. 449, 452; *Silverstein* v. *Brown,* 153 App. Div. 677, 680.)

It thus appears that while the petitioner is seeking to displace his daughter's uncle as general guardian, at the same time he is contesting his wife's will and seeks to take away, at least in part, the benefits thereunder which his daughter would otherwise receive.

He cannot be permitted to take such antagonistic positions at the same time. This fact already appearing, it would be but an idle gesture to open the guardianship proceeding only to deny the husband's right to appointment therein.

A question of jurisdiction arises. The application for guardianship was not made until after Mrs. Clarke's death, and under the decision in *Matter of Thorne* (240 N. Y. 444) the domicile of the child Elva became that of her father, subject, of course, to possible exceptions outlined in the opinion in the *Thorne* case. To meet this point the petitioner offered in evidence a letter dated in July, 1931, purporting to have been written by his daughter to him at New Lebanon Center, N. Y. Although no objection was made to this letter because of lack of proof of its authenticity, nevertheless the rights of an infant being involved, I feel it my duty to disregard the letter because there was no proof of its being in the handwriting of the infant. (*Todd Protectograph Co.* v. *Wells-Fargo & Co. Express,* 111 Misc. 282; *Romeike, Inc.,* v. *Romeike & Co., Inc.,* 179 App. Div. 712; affd., 227 N. Y. 561; *Material M. M. Assn., Ltd.,* v. *Material Men's Credit Agency, Inc.,* 191 App. Div. 73; 23 C. J. 109, 113.)

Upon the record as it now is, there being no competent testi-

mony to disprove the recitals in the infant's petition that she resides in Orange county and did not know her father's address, those allegations are accepted as true and, therefore, this court had jurisdiction of the proceeding. (Surr. Ct. Act. § 174; *Matter of Thorne*, 240 N. Y. 444, 450.)

Application to intervene in this proceeding is denied.